**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)
Lirit Ariella King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
        kgrombacher@bradleygrombacher.com
        lking@bradleygrombacher.com

*All Additional Counsel Listed on Following Page.*

Attorneys for Plaintiff, Guadalupe Alvarenga Corona and the Putative Class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUADALUPE ALVARENGA CORONA, individually and on behalf of a class of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>PNC BANK, N.A., a Pennsylvania corporation; AND DOES 1-100,<br><br>Defendants. | **CASE NO: 20-cv-06521-DMG-SP**<br>Assigned to Hon. Mark C. Scarsi, CR 7C<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF:**<br><br>1. **BREACH OF CONTRACT**<br>2. **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE [CAL. CIV. CODE §§ 1788 ET SEQ.]**<br>3. **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 et seq**<br><br>**DEMAND FOR JURY TRIAL** |

**Additional Counsel for Plaintiff and the Putative Class:**
**BRADLEY/GROMBACHER, LLP**
Robert N. Fisher (Ca. Bar No. 302919)
246 5th Avenue, Suite 522
New York, NY 10001
Telephone: (646) 443-6235
E-Mail: rfisher@bradleygrombacher.com

**LEXICON LAW, PC**
John R. Habashy, Esq. (SBN 236708)
Tiffany N. Buda, Esq. (SBN 232679)
633 W. 5th Street, 28th Floor
Los Angeles, CA 90071
Tel:  (213) 223-5900
Fax: (888) 373-2107
E-Mail: john@lexiconlaw.com
          tiffany@lexiconlaw.com

Plaintiff Guadalupe Alvarenga Corona ("Plaintiff" or "Corona"), on behalf of herself and all others similarly situated, alleges violations of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), the California Unfair Competition Law ("UCL"), and breach of contract against Defendant PNC Bank, N.A. ("Defendant" or "PNC"), as follows:

## NATURE OF THE ACTION

1. Although only a quarter of U.S. consumers had a home loan in 2019, mortgage debt is the largest of all the debt types by overall volume[1]. Overall, there was $9.6 trillion in total outstanding mortgage debt in 2019, up 14% or $1.2 trillion over the past decade.[2]

2. The word mortgage literally translates to "death pledge[3]" and it often feels as such to borrowers who struggle to pay each month. Such struggle is compounded when borrowers make their mortgage payments via automated phone system or online only to incur additional, illegal, charges ("Pay-to-Pay fees" or "Speedpay fees").

3. PNC claims its "strong values are fundamental to the success of our company. We are continuously finding new ways - through our products, services and community efforts - to prioritize our customers, communities and shareholders.[4]" Yet, such statement is merely lip service as PNC does not "prioritize" its customers when it charges homeowners such as Plaintiff excessive fees of at least $7.00 to make a simple automated "over-the-phone" or internet payment ("Pay-to-Pay Transaction"). PNC undertakes such actions despite its uniform contractual

---

[1] https://www.experian.com/blogs/ask-experian/research/consumer-debt-study/ (last viewed June 3, 2020)
[2] Id.
[3] https://www.businessinsider.com/mortgage-means-death-pledge-2016-3 (last viewed June 3, 2020)
[4] https://www.pnc.com/en/about-pnc/company-profile/corporate-overview.html (last viewed June 19, 2020.)

1
SECOND AMENDED CLASS ACTION COMPLAINT – CASE NO. 20-CV-06521-DMG-SP

obligations to charge only fees explicitly allowed under the mortgage, applicable law, and only those amounts actually disbursed.  Such fees are not expressly authorized in the terms of standard mortgage agreements utilized by PNC.

4.      Such fees violate the RFDCPA and the UCL and breaches uniform covenants in mortgages by assessing fees to borrowers that are either not permitted by law or are expressly prohibited by their mortgage agreements.

5.      Even if some fees were allowed, the mortgage uniform covenants allow PNC to pass along only the actual cost of fees incurred by it to the borrower – here only a few cents, if any cost at all.

6.      Moreover, as a servicer of FHA-insured loans, PNC is bound by the rules and regulations of the Secretary of Housing and Urban Development ("HUD"), and those rules are incorporated by reference into all FHA-insured mortgages. Under FHA servicing rules, a mortgage servicer may not charge a borrower any fee not authorized by the FHA. The FHA has not authorized Pay-to-Pay fees.

7.      PNC must be held accountable for its actions. It knowingly violated the RFDCPA and FHA rules by demanding excessive Pay-to-Pay fees, and breached mortgage contracts by charging fees not expressly allowed under the uniform contractual obligations contained in standard form mortgage agreements. Further, by unlawfully assessing such fees, PNC has engaged in unlawful, unfair and fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL").

8.       On behalf of herself and all others similarly situated, Plaintiff seeks injunctive, declaratory, and compensatory relief against PNC for its violation of the RFDCPA, , the UCL, and breach of contract.

## PARTIES

9.      Plaintiff is a natural person residing in Los Angeles who has a mortgage loan serviced by PNC on her home located in Panorama City, California.

10. Defendant PNC is an American bank holding company and financial services corporation based in Pittsburgh, Pennsylvania.

11. Plaintiff does not know the true names, capacities, relationships and/or the extent of participation of Defendants DOES 1 through 100, inclusive, in the conduct alleged in this Complaint. For that reason, Defendants DOES 1 through 100, inclusive, are sued under such fictitious names. Plaintiff prays for leave to amend this Complaint when the true names and capacities are known. Plaintiff is informed and believes, and based thereon alleges, that each fictitiously named defendant is and was responsible in some way for the alleged wage and hour violations and other wrongful conduct which subjected Plaintiff and the Class, as defined below, to the illegal employment practices, wrongs and injuries complained of herein. All references in this Complaint to "Defendants" shall be deemed to include all DOE Defendants.

12. At all times herein mentioned, each of said Defendants participated in the doing of the acts hereinafter alleged to have been done by the named Defendants; and furthermore, the Defendants, and each of them, were the agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned were acting within the course and scope of said agency and employment. Defendants, and each of them, approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

13. At all times mentioned herein, Defendants, and each of them, were members of and engaged in a joint venture, partnership, and common enterprise, and acting within the course and scope of and in pursuance of said joint venture, partnership, and common enterprise. Further, Plaintiff alleges that all Defendants were joint employers for all purposes of Plaintiff and all members of the Classes (as defined below).

///

**JURISDICTION AND VENUE**

14. Plaintiff, on behalf of herself and all others similarly situated, hereby brings this class action under Civil Code § 1770 et. seq., and 1788 et. seq., and California Business and Professions Code § 17200 et. seq., in addition to seeking declaratory and injunctive relief.

15. Plaintiff brought this action in the Superior Court of California for the County of Los Angeles. Defendant removed this action to this Court citing the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") and 28 U.S.C. §§ 1331, 1332, 1446 and 1453.

16. Plaintiff was, and is, a victim of Defendants' policies and/or practices complained of herein, lost money and/or property, and has been deprived of the rights guaranteed to her by the California Civil Code, and California Business and Professions Code in Los Angeles County.

17. Plaintiff is informed and believes, and based thereon alleges, that during the four years preceding the filing of the Complaint and continuing to the present, Defendants did (and do) business by servicing mortgages throughout Los Angeles County and throughout California and, therefore, were (and are) doing business in Los Angeles County and the State of California.

**APPLICABLE LAW**

*The Rosenthal Act*

18. The Rosenthal Act is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." (*See People ex rel. Lungren v. Superior Court*, 14 Cal.4th 294, 313, 58 Cal.Rptr.2d 855, 926 P.2d 1042 (Cal. 1996) ("civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose"); *Komarova v. National Credit Acceptance, Inc.*, 95 Cal.Rptr.3d 880, 892, 175 Cal.App.4th 324, 340 (Cal.App. 1 Dist. 2009).

19. The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or others, engages in

debt collection. Cal. Civ. Code.

20. The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due r owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

21. The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

22. The Rosenthal Act makes it illegal for any entity covered by it to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the FDCPA, PNC also violates the Rosenthal Act.

23. The Rosenthal Act prohibits "(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt expect as permitted by law." Cal. Civ. Code § 1788.14.

24. The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of … charge if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

## FACTUAL ALLEGATIONS

25. On or around March of 2007, Plaintiff purchased a home in Panorama City, California through a loan from National City Mortgage, a division of National City Bank, secured by a mortgage on the property (the "Mortgage Agreement"). PNC is presently the servicer on the loan.

26. PNC collected at least one Pay-to-Pay fee from Plaintiff and when Plaintiff has made such payment, PNC charged her a fee of approximately $7.00. This fee is not authorized by the deed of trust.

27. Plaintiff paid this Pay-to-Pay fee on May 11, 2020.

28. Although there are payment methods that do not require payment of a

fee, Plaintiff was forced to use the Speedpay service and pay the Pay-to-Pay fee because she made her payment during the grace period and would have suffered more significant consequences if her payment did not arrive by May 16, 2020.

29. In this regard, Plaintiff's mortgage payment is due on the first of every month, but there is a grace period until the 16th.

30. When Plaintiff paid the fee on May 11, 2020, her mortgage payment was already due and owing because she was in the grace period.

31. If Plaintiff does not pay before the grace period expires, she is charged a fee of $25.66 and she would suffer other consequences such as putting her mortgage in arrears and damaging her credit.

32. Accordingly, Plaintiff did not voluntarily elect to use Speedpay and pay a fee, but instead was forced to choose the lesser of two fees set up by PNC.

33. By charging this fee, PNC represented to Plaintiff that it was a permissible fee and not a fee that was barred by law and in breach of her Mortgage Agreement.

34. Plaintiff's Mortgage Agreement is attached as **Exhibit A**.

35. The Pay-to-Pay fee is not authorized by the Mortgage Agreement.

36. PNC's demand for payment of Pay-to-Pay fees were a direct breach of Paragraph 9 of the Mortgage Agreement, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section. Assuming PNC is allowed to collect a fee under the auspices that it is a "legal proceeding that might significantly affect Lender's rights," , PNC collected more than the amount it disbursed to process the Pay-to-pay transactions.

37. PNC's demand for payment of Pay-to-Pay fees were also a direct breach of Paragraph 14 of its Mortgage Agreement, "Uniform Covenants" section, stating that lender may not charge fees prohibited by "Applicable Law." The Agreement defines "Applicable Law" in Paragraph I as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules

and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *See* Exhibit A, ¶16.

38. By charging Pay-to-Pay fees, PNC has violated the "Applicable Law" provision. Charging Pay-to-Pay fees violates the RFDCPA because the Mortgage Agreement does not expressly allow PNC to charge Pay-to-Pay fees. See 15 U.S.C. § 1692f which is incorporated into the RFDCPA (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"); Cal. Civ. Code § 1788.13(e) (making it illegal to falsely represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation"). *See also Sanders v. LoanCare LLC*, No. 18-CV-09376, 2019 WL 441964, at *2 (C.D. Cal. Feb. 1, 2019) (holding that loan servicer's practice of assessing fees not expressly authorized by the plaintiff's mortgage violated the RFDCPA); *Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV 14-06691 SJO (VBKx), 2015 WL 13665037, at *13 (C.D. Cal. Oct. 19, 2015) (allegation that mortgage servicer charged improper fees to mortgage stated a claim under Cal. Civ. Code § 1788.13(e)). By violating federal law and the law of California, PNC has not only violated those statutes, but also breached the Mortgage Agreement.

39. Because the PNC breached terms of the "Uniform Covenants" section of its deed of trust with Plaintiff, PNC has breached its contract on a class-wide basis.

40. Prior to filing this Complaint, Plaintiff made a written pre-suit demand upon PNC for herself and the classes of individuals that Plaintiff seeks to represent.

41. Although PNC has attempted to cure the breaches complained of herein by Plaintiff, PNC has not given Plaintiff all of the relief that she has requested including the fact that it has made no effort to cure its breach on a class-wide basis or to bring itself into compliance with the law.

42. Rather, PNC has attempted to pick off plaintiff so that she cannot serve as class representative.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and all others similarly situated as a class action, pursuant to Fed. R. Civ. P. 23. The classes which Plaintiff seeks to represent are composed of, and defined as follows:

> **California Class:** All persons with a California address who were borrowers on residential mortgage loans to which PNC acquired servicing rights, and paid a fee to PNC for making a loan payment by telephone, interactive voice response system ("IVR"), or the internet, during the applicable statutes of limitations for Plaintiff's UCL claim through the date a class is certified.
>
> **California Subclass:** All persons with a California address who were borrowers on residential mortgage loans that were not owned by PNC and to which PNC acquired servicing rights when such loans were 30 days or more delinquent on loan payment obligations, and paid a fee to PNC for making a loan payment by telephone, IVR, or the internet, during the applicable statuses of limitations for Plaintiff's UCL claim through the date a class is certified.

44. Class members are identifiable through Defendant's records and payment databases.

45. Excluded from the classes are the Defendant, any entities in which it has a controlling interest; its agents and employees, and any Judge to whom this action is assigned and any number of such Judge's staff and immediate family.

46. Plaintiff proposes that she serve as class representative.

47. Plaintiff and the Class have all been harmed by the actions of Defendant.

48. Numerosity is satisfied. According to PNC's servicing records there are thousands of class members. Individual joinder of these persons is impracticable.

49. There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

    a. Whether PNC assessed Pay-to-Pay feed on Class members;

    b. Whether PNC breached its contracts with borrowers by charging Pay-to-Pay fees not authorized by their mortgage agreements.

    c. Whether PNC violated the RFDCPA by charging Pay-to-Pay fees not due;

    d. Whether PNC violated the UCL;

    e. Whether PNC's cost to process Pay-to-Pay Transactions is less than the amount that it charges for Pay-to-Pay fees;

    f. Whether Plaintiff and the Classes were damaged by PNC's conduct;

    g. Whether Plaintiff and the Classes entitled to actual and/or statutory damages as a result of PNC's actions;

    h. Whether Plaintiff and the Classes are entitled to restitution;

    i. Whether Plaintiff and the Classes are entitled to attorney's fees and costs.

50. Plaintiff's claims are typical of the claims of the Class members. PNC charged her to Pay-to-Pay fees in the same manner as the rest of the Class members. Plaintiff and the Class members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges or, at most, cap the amount of Pay-to-Pay fees allowed to be charged at the actual amount disbursed by PNC to process Pay-to-Pay Transactions.

51. Plaintiff is an adequate class representative because her interests do not conflict with the interests of the class members and she will adequately and fairly protect the interests of the class members. Plaintiff has taken actions before

filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

52. Plaintiff has hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

53. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

54. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT 1

### Breach of Contract

### On Behalf of Plaintiff and the California Class

55. All previous paragraphs are hereby incorporated by reference.

56. Plaintiff purchased a home subject to the Mortgage Agreement. See Exh. A.

57. When PNC became servicer of her mortgage, it became a party to the Mortgage Agreement. Thus, PNC entered into the Mortgage Agreement with Plaintiff whereby money was lent to Plaintiff to purchase property in exchange for certain payment over time.

58. The Loan Charge provision in the Mortgage Agreement acknowledges that "Lender may not charge fees that are expressly prohibited by this Security Instrument or Applicable law" (Paragraph 14.). PNC may only charge the amounts actually disbursed to pay for the cost of processing the Pay-to-Pay transactions. PNC assessed $7.00 Pay-to-Pay fees not agreed to in the Mortgage agreement and in excess of the amounts actually disbursed by PNC to pay for the cost of the Pay-to-

Pay Transactions.

59. PNC breached its contracts with Plaintiff and the California Breach of Contract Class members when it charged pay-to-Pay fees not agreed to in the Mortgage Agreement, in violation of applicable law, and in excess of the amounts actually disbursed by PNC to pay for the cost of Pay-to-Pay Transactions.

60. Plaintiff and the California Class members were harmed in this breach.

## COUNT II

**Violation of the Rosenthal Fair Debt Collection Practices Act**

**Cal. Civ. Code §§ 1788 et seq. (RFDCPA)**

**On behalf of Plaintiff and the California Class**

61. All previous paragraphs are hereby incorporated by reference.

62. The RFDCPA applies to PNC because it regularly engages in debt **collection** as defined by the statute. Cal. Civ. Code § 1788.2.

63. By charging the Pay-to-Pay fee, a portion of which it retains, PNC acted in violation of the federal Fair Debt Collection Practices Act ("FDCPA"), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

64. The Mortgage Agreements of Plaintiff and the Nationwide Class members do not expressly authorize PNC to collect Pay-to-Pay fees. At most, the Mortgage Agreements permit PNC to collect the actual amount disbursed to process the Pay-to-Pay transactions.

65. Although the Mortgage Agreement do not expressly authorize collection of Pay-to-Pay fees. PNC collected such fees anyway.

66. In doing so, PNC violated 15 U.S.C. § 1692f.

67. The RFDCPA makes it illegal for any entity covered by the RFDCPA to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the FDCPA,

1 PNC violated the RFDCPA.

68. The RFDCPA makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

69. By assessing Pay-to-Pay fees, PNC represented that the mortgage loans of the Plaintiff and the California Default Subclass that their debts may be increased by the addition of the Pay-to-Pay fees, even though Pay-to-Pay fees may not be legally added to the existing obligation.

70. Plaintiff did not know that the Pay-to-Pay fees were illegal at the time she paid them. She reasonably relied on PNC's implicit representation that the fees were not illegal.

71. Plaintiff has no special legal knowledge of knowledge of the terms of the RFDCPA.

72. Charging Pay-to-Pay fees to Plaintiff increases her debt because it increases the sums that Plaintiff must pay in order to satisfy her debt.

73. This conduct violated Civil Code § 1788.13.

74. Additionally, by collecting and attempting to collect Pay-to-Pay fees that were not otherwise permitted by law from Plaintiff and class members, Defendants violated the Rosenthal Act's prohibition against "(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

75. By passing on to Plaintiff and the class members the expenses incurred by PNC in using the Speedpay system to accept payments, PNC violated the RFDCPA.

76. As a result of each and every violation of the RFDCPA, Plaintiff and the California Default Class Members are entitled to any actual damages pursuant

to Cal. Civ. Code § 1788.30(a), statutory damages for a knowing or willful violation in the amount up to $1,000 pursuant to California Civil Code § 1788.30(b), and reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c) from PNC.

## COUNT III

### Violation of the "Unlawful" Prong of the UCL

### On behalf of Plaintiff and the California Class and California Subclass

77. All previous paragraphs are hereby incorporated by reference.

78. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice Cal. Bus. & Prof. Code § 17200.

79. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

80. As described in detail above, PNC's conduct described herein violates the RFDCPA. These violations are sufficient to support Plaintiff's claim under the unlawful prong of the UCL.

81. As a result of the conduct above, PNC has been unjustly enriched at the expense of Plaintiff and members of the California Default Subclass. Specifically, PNC has been unjustly enriched by obtaining revenues and profits that it would not have otherwise obtained absent its false, misleading and deceptive conduct.

82. Through its unlawful acts and practices, PNC has improperly obtained money from Plaintiff and the California Default Subclass. As such, Plaintiff requests that the Court cause PNC to restore the money to Plaintiff and the California Default Subclass members, and to enjoin PNC from continuing to violate the UCL in the future. Otherwise, Plaintiff and the members of the California Default Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that the court:

1. Certify the proposed Class and Subclass;
2. Award damages, including compensatory and exemplary damages, to Plaintiff and the Classes in an amount to be determined at trial;
3. Award statutory damages and/or penalties to Plaintiff and the proposed Class and Subclass;
4. Permanently enjoin PNC from the wrongful and unlawful conduct alleged herein;
5. Award Plaintiff and the Class and Subclass members their expenses and costs of suit, including reasonable attorney's fees to the extent provided by law;
6. Award pre- and post-judgment interest to the extent provided by law; and
7. Award such further relief as the Court deems appropriate.

DATED: November 3, 2020

**BRADLEY/GROMBACHER LLP**
**LEXICON LAW, PC**

By: */s/ Kiley Lynn Grombacher*
Marcus J. Bradley, Esq.
Kiley Lynn Grombacher, Esq
Lirit Ariella King, Esq.
Robert Neil Fisher, Esq.
John R. Habashy, Esq.
Tiffany N. Buda, Esq.

Attorneys for Plaintiff and the Putative Class

# DEMAND FOR JURY TRIAL

Plaintiff and members of the Plaintiff class further demand a trial by jury on all issues so triable as a matter of right.

DATED: November 3, 2020

**BRADLEY/GROMBACHER LLP**
**LEXICON LAW, PC**

By: */s/ Kiley Lynn Grombacher*
Marcus J. Bradley, Esq.
Kiley Lynn Grombacher, Esq
Lirit Ariella King, Esq.
Robert Neil Fisher, Esq.
John R. Habashy, Esq.
Tiffany N. Buda, Esq.

Attorneys for Plaintiff and the Putative Class