UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE ALVARENGA CORONA, individually and on behalf of a class of other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>PNC Financial Services Group, Inc., a Pennsylvania Corporation; PNC Bank, N.A., a Pennsylvania Corporation; and DOES 1-100,<br><br>Defendants. | Case No. 2:20-cv-06521-MCS (SPx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [32]** |

Defendant PNC Bank, N.A. ("PNC Bank") moves to dismiss Plaintiff Guadalupe Alvarenga Corona's ("Corona") complaint. Mot., ECF No. 32. Corona filed an opposition and PNC Bank filed a reply. Opp'n, ECF No. 33; Reply. ECF No. 34. The Court deemed this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the motion is granted in part and denied in part.

1

## I. BACKGROUND

In 2007, Corona "purchased a home in Panorama City, California through a loan from National City Mortgage, a division of National City Bank, secured by a mortgage on the property." Second Am. Compl. ("SAC") ¶ 25. "PNC is presently the servicer on the loan." *Id*. Corona's "mortgage payment is due on the first of every month, but there is a grace period until the 16th." *Id*. at ¶ 29. When Corona made a mortgage payment on May 11, 2020, PNC Bank "charged her a fee of approximately $7.00" for using PNC Bank's Speedpay service. *Id*. at ¶¶ 26, 28. Corona alleges that even though she had access to other "payment methods that do not require payment of a fee," she "was forced to use the Speedpay service" because she paid her mortgage "during the grace period and would have suffered more significant consequences if her payment did not arrive by May 16, 2020." *Id*. at ¶ 28. Corona alleges that the Speedpay service is a pay-to-pay fee that violates the Deed of Trust ("DOT") as well as state laws. *Id.* at ¶¶ 35–38.

Plaintiffs bring this putative class action asserting three claims: (1) breach of contract; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*; and (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. SAC ¶¶ 55-82. PNC Bank moves to dismiss these claims.[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[1] Corona does not oppose the portion of PNC Bank's motion arguing that the breach of contract claim should be dismissed. Opp'n 2, n. 1. The Court **GRANTS** PNC Bank's motion to dismiss Corona's breach of contract claim.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. DISCUSSION

### A. Request for Judicial Notice

PNC Bank requests judicial notice of four documents. RJN, ECF No. 32-6. Corona opposes the request. Opp'n 4. A court may take judicial notice of a fact not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

PNC Bank seeks judicial notice of the following documents: (1) The Note dated March 22, 2007, by and between Plaintiff and National City Mortgage, a division of National City Bank; (2) PNC Financial Services Group, Inc's Form 10-K, for the fiscal year ending on December 31, 2010, as retrieved from the SEC's webpage; (3) The October 27, 2009 letter from the Comptroller of the Currency ("OCC"), entitled "Conditional Approval # 928," regarding "Application to merge National City Bank . .

. with and into PNC Bank, National Association"; (4) Plaintiff's Notice of Breach; and (5) PNC's Responding Cure Letter.

Corona references the Note dated March 22, 2007, the Notice of Breach, and PNC Bank's cure letter in the SAC. Regarding the Note dated March 22, 2007 "the court takes judicial notice of it because it is a document whose authenticity is not challenged and . . . [the] complaint relies upon it." *Anderegg v. GMAC Mortg.*, No. C 12-04136 LB, 2012 WL 6020098, at *1, n. 4 (N.D. Cal. Dec. 2, 2012). Corona also references the Notice of Breach and PNC Bank's cure letter in the SAC and under the incorporation by reference doctrine, this "court may 'consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them.'" *Watkins v. Inv. Retrievers, Inc.*, No. 2:17-cv-01348-KJM-CKD, 2018 WL 558833, at *5 (E.D. Cal. Jan. 24, 2018) (quoting *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)). The Court takes judicial notice of the Note dated March 22, 2007, the Notice of Breach, and PNC Bank's cure letter.

The Court declines to take judicial notice of PNC Financial Service Group's Form 10-K, as PNC Bank attempts to use it to establish "the truth of the content" in the Form 10-K. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1032 (C.D. Cal. 2015) (quoting *Patel v. Parnes,* 253 F.R.D. 531, 546 (C.D.Cal.2008) (emphasis added)) ("It is only 'appropriate[, however,] for the court to take judicial notice of the content of the SEC Forms [ ] and the fact that they were filed with the agency. *The truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201.*'") However, the Court takes judicial notice of the October 27, 2009 letter from the Comptroller of the Currency. *Gerritsen*, 112 F. Supp. 3d at 1033 (citation omitted) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies.")

### B. Voluntary Payment Doctrine

PNC Bank contends that all of Corona's claims must be dismissed under the voluntary payment doctrine, "an affirmative defense that bars the recovery of money that was voluntarily paid with knowledge of the facts." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012). "A payment is made under duress where a 'reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe.'" *Adamson v. ADT, LLC*, No. CV 12-10558 DMG (PLAx), 2014 WL 12551405, at *5 (C.D. Cal. Apr. 7, 2014) (quoting *Steinman v. Malamed*, 111 Cal. Rptr. 3d 304, 309 (2010)). An affirmative defense may be considered on a motion to dismiss only if the defense is based on undisputed facts or on facts appearing on the face of the complaint and in judicially noticeable materials. *Scott v. Kuhlmann*, 746 F. 2d 1377, 1378 (9th Cir. 1984); *Ellsworth*, 908 F. Supp. 2d at 1083.

PNC Bank argues that Corona "had 'full knowledge' of the Speedpay fee before she voluntarily incurred and paid it" and that "her DOT establishes she could have avoided the fee by, among other action, sending a check by mail." Mot. 25 (citing *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961)). Essentially, PNC Bank bases its argument on the proposition that Corona could have avoided paying the Speedpay service fee. This proposition, however, is disputed. Corona alleges she had to use the Speedpay service fee because she paid her mortgage "during the grace period and would have suffered more significant consequences if her payment did not arrive" on time. SAC ¶ 28. These consequences include "a fee of $25.66" as well as "putting her mortgage in arrears and damaging her credit." SAC ¶ 31. This Court therefore finds that the voluntary payment doctrine does not bar Corona's claims at this stage of litigation. *Cf. Scott*, 746 F. 2d at 1378 (allowing an affirmative defense to "be raised by [a] motion to dismiss" in part because "the defense raises no disputed issues of fact").

However, this decision is made without prejudice to PNC Bank raising this defense later in this litigation.[2]

### C. RFDCPA (Count II)

Plaintiffs asserts three theories under the RFDCPA: (1) by assessing the Speedpay service fee, PNC Bank falsely represented that mortgage debts may be increased by the pay-to-pay fees in violation of California Civil Code section 1788.13(e); (2) by collecting the Speedpay service fee, PNC Bank violated California Civil Code section 1788.14 which prohibits a debt collector from collecting "from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt;" and (2) PNC Bank unlawfully collected the Speedpay service fee, which was not

---

[2] The Court also notes that PNC Bank's argument that the voluntary payment doctrine applies here is inadequately briefed. It is not the role of the Court to make parties' arguments for them. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). For instance, PNC Bank does not address why the voluntary payment doctrine is a defense to Corona's UCL Claim. One court has found that it in fact should not apply to UCL claims. *See Sanders v. LoanCare, LLC,* No. CV 18-9376 PA (RAOX), 2020 WL 8365241, at *4 (C.D. Cal. Dec. 4, 2020) ("The Court previously rejected Defendant's argument that the voluntary payment doctrine poses a unique defense for Plaintiff's UCL claim" because it "would run contrary to public policy."). PNC Bank also does not address why the voluntary payment doctrine should apply when numerous courts have held that the optional nature of these fees does not prevent a Rosenthal Act claim from proceeding past the pleading stage. *Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-cv-04303-WHO, 2020 WL 1904596, at *2, *5 (N.D. Cal. Apr. 17, 2020) (collecting cases to show that the plaintiff adequately alleged a Rosenthal Act claim even when the fee was optional). Recently, when considering the defendant's argument that the voluntary payment doctrine should apply to plaintiff's claims of Rosenthal Act violations, another court in this district stated that "the voluntary nature of a Pay-to-Pay fee does not preclude application of the Rosenthal Act." *Langston v. Gateway Mortg. Grp., LLC*, No. 5:20-cv-01902-VAP-KKx, 2021 WL 234358, at *4, n. 4 (C.D. Cal. Jan. 15, 2021).

expressly authorized by the mortgage agreement in violation of 15 U.S.C. § 1692f(1) and, by extension, California Civil Code section 1788.17. SAC ¶¶ 61–76.

Before addressing specific sections of the RFDCPA, PNC Bank alleges that the Speedpay service fee is not debt and is not a fee charged in connection with collection of debt. Mot. 9-13. However, the underlying mortgage payments are debt, which is the relevant factor. *See DiFlauro v. Bank of America, N.A.*, No. CV 20-5692 DSF (SKx), slip op. at 11, n. 4 (C.D. Cal. Dec. 2, 2020) (stating that "[e]ven though Plaintiffs assert in their opposition that the *fees* were not due and owing, Plaintiffs clearly allege in the FAC . . . [that] his underlying *mortgage debt* was due and owing [] which is sufficient under the Rosenthal Act to include Plaintiffs' allegations within its purview (emphasis in original));[3] *see also Sanders v. LoanCare LLC*, No. 18-CV-09376, 2019 WL 441964, at *3, *4 (C.D. Cal. Feb. 1, 2019) (analyzing a mortgage payment paid during a grace period as a debt). Section 1788.2(d) defines debt as "money, property, or their equivalent that is due or owing." Here, Corona alleges her mortgage debt was "due and owing" because she paid it during the grace period. SAC ¶¶ 28-30. Another court has previously stated that a plaintiff who alleges they made a mortgage payment during a "grace period . . . has pled sufficient facts for the Court to logically conclude that Plaintiff's mortgage debt was 'due and owing' at the time Defendant's alleged violations occurred." *Sanders*, 2019 WL 441964, at *3.

PNC Bank also argues that the Speedpay fee is not made "in connection with" Corona's monthly payment because Corona incurred the Speedpay fee "at her option." Mot. 11-12. But even though a borrower has other options for making a payment, "[t]he borrower is still paying the fee in connection with the loan payment, and there would be no reason to pay the fee but for the need to pay the principal obligation." *Lembeck v. Arvest Cent. Mortg. Co.*, __ F. Supp. 3d __, No. 20-CV-03277-VC, 2020 WL 6440502, at *1 (N.D. Cal. Nov. 3, 2020).

---

[3] Corona filed this order with her opposition. Grombacher Decl. ¶ 5, Ex. B.

7

### 1. California Civil Code Section 1788.13(e)

California Civil Code Section 1788.13(e) of the RFDCPA prohibits debt collectors from collecting or attempting to collect a debt by making a "false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e).

PNC Bank argues that this claim fails because "the SAC identifies no allegedly false writing or oral statement by PNC." Mot. 13-14. Corona alleges that PNC Bank falsely represented that her debt could "be increased by the addition of the Pay-to-Pay fees." SAC ¶ 69. The pleaded facts, when viewed in the light most favorable to Corona, give rise to a reasonable inference that a fee assessed to pay a mortgage could increase the underlying mortgage debt. *See DiFlauro*, No. CV 20-5692 DSF (SKx), slip op. at 12-13 (finding that similar allegations were adequate to support a § 1788.13(e) claim against a Rule 9(b) challenge); *Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV 14-06691 SJO (VBKx), 2015 U.S. Dist. LEXIS 193739, at *36 (C.D. Cal. Oct. 19, 2015) ("The act of charging fees is an implied representation of their validity."); *cf. Lembeck*, 2020 WL 6440502, at *2, *3 (dismissing § 1788.13(e) claim with leave to amend because the complaint did not contain any facts suggesting the defendant "represented that the IVR fee could 'increase' the underlying debt").

### 2. California Civil Code Section 1788.14(b)

California Civil Code Section 1788.14 of the RFDCPA prohibits a debt collector from "collect[ing] a consumer debt by . . . [c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law."

PNC Bank argues this claim fails because Corona's "allegations merely mimic the words of the statute." Mot. 15. PNC Bank also argues that Section 1788.14(b)

applies to "prevent[ing] the professional debt collector from presenting his fee for professional services to the debtor as part of the debt that the debtor must pay to satisfy the obligation to the creditor" and that the SAC does not allege these types of facts. *Id*. PNC Bank instead argues that allegations in the SAC show Corona voluntarily made this payment and had alternative payment options. *Id*. Finally, PNC Bank argues that Section 1788.14(b) does not apply because "[t]he Note makes delivery of payment a duty of the debtor, thereby rendering the expense of delivering payment a cost 'incurred by the debtor,' not PNC." *Id*.

The Court disagrees with PNC Bank. Corona alleges that PNC Bank is a debt collector who "pass[ed] on to Plaintiff and the class members the expenses incurred" in collecting the underlying debt. SAC ¶¶ 74, 75. Corona has sufficiently alleged a claim under Section 1788.14(b). *Anderson v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-05124-SVW-AGR, 2016 WL 11518592, at *3 (C.D. Cal. Feb. 24, 2016) (stating that Plaintiff's "allegation that Ocwen wrongfully charged various fees in connection with its mortgage servicing activities . . . is a cognizable claim under the Rosenthal Act" even though the allegations asserted "are spare"). PNC Bank also does not support its other claims with any case law as to whether Section 1788.14(b) is supposed to apply to a "professional debt collector" or why the language in the Note warrants dismissing the Section 1788.14(b) claim. Further, this court has previously allowed Section 1788.14(b) claims to proceed even if there were alternative methods of payment. *See DiFlauro*, No. CV 20-5692 DSF (SKx), slip op. at *11 (finding a Section 1788.14(b) was adequately alleged even when the "convenience fee . . . [was] optional").

### 3. California Civil Code Section 1788.17[4]

Section 1788.17 requires compliance with the FDCPA, which prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f; *see Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) ("The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations").

PNC Bank argues that they are not a debt collector under the FDCPA because they are the loan originator. Mot. 17, 18. PNC Bank bases its argument in part on the Form 10-K, of which the Court denied judicial notice. The document which the Court did take judicial notice of does not establish that PNC Bank is the loan originator because it only provides for conditional approval of the merger between National City Bank and PNC Bank. Mot. 17; Levin Decl. ¶ 4, Tab 2 at 1. Even still, "a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender." *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011). Additionally, "mortgage servicers are debt collectors that undertake debt collection under" the RFDCPA. *Torliatt*, 2020 WL 1904596, at *4.

Corona has adequately alleged that PNC Bank is a debt collector under the RFDCPA.

---

[4] PNC Bank alleges that Corona waived her Section 1788.17 claim because Corona's "FAC abandoned these claims entirely." Mot. 16. Upon reviewing the various complaints Corona has filed, the Court finds that it is not clear whether Corona voluntarily dismissed her Section 1788.17 claim when she filed the First Amended Complaint. *See generally* First Amended Complaint ("FAC"), ECF No. 13; *Cf. Heath v. Google LLC*, No. 15-cv-01824-BLF, 2018 WL 398463, at *3, *4 (N.D. Cal. Jan. 12, 2018) (acknowledging that plaintiff "omit[ted] the disparate impact claim from the FAC" as a basis for finding that plaintiff waived the claim). Further, the Court declines to consider arguments based on the parties' intentions in allowing Corona to file the FAC. Mot. 6, 7; Opp'n 14, 15; Reply 9, 10. The Court therefore declines to dismiss the claim or strike references to Section 1788.17 or the FDCPA on this basis.

PNC Bank next argues that the Speedpay service fees do not violate the FDCPA because they are not "incidental" to a debt and the FDCPA does not prohibit the fees. Mot. 18-20. PNC Bank alleges that Corona was not forced to use Speedpay service fees, thus precluding it from being incidental to a debt. *Id*. at 18. However, "the majority of cases in this circuit [] have held that convenience fees may violate the FDCPA." *Torliatt*, 2020 WL 1904596, at *2 (collecting cases); *Campbell v. Rushmore Loan Mgmt. Servs.*, No. 8:20-cv-01695-MCS-JDE, slip op. at *8, n. 4.[5] PNC Bank has also not pointed to any "provision of state law that permits such fees" and Corona has alleged that PNC Bank is not "expressly allow[ed] to charge" these fees. *See Torliatt*, 2020 WL 1904596, at *3; SAC ¶ 38.

### D. PNC Bank's Alleged Cure

Section 1788.30(d) states "[a] debt collector shall have no civil liability . . . if, within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor." PNC Bank alleges that they have "cured any purported violation of the RFDCPA" and that it is irrelevant that PNC Bank did not "cure its breach on a class-wide basis." Mot. 20, 21; *see also* SAC ¶ 41. PNC Bank argues that, under *Afewerki v. Anaya L. Grp.*, 868 F.3d 771 (9th Cir. 2017), Corona's RFDCPA claims should be dismissed even though she brings this claim on behalf of a putative class. Mot. 21-23. Corona argues that PNC Bank has not cured Corona's claims or the class claims and that the pick off exception applies in this instance. Opp'n 18-23.

The Court declines to rule on whether PNC Bank has cured at this time and finds that this issue is better suited to be ruled upon at a later stage in litigation. *Afewerki v. Anaya L. Grp.*, No. CV 14-07132-RGK (SHx), 2015 WL 13845131, at *3 (C.D. Cal.

---

[5] Corona filed this order with her opposition. Grombacher Decl. ¶ 5, Ex. A.

11

Jan. 2, 2015) (stating that "further fact discovery is required to determine whether that correction actually cured the alleged violations" and that "Defendants' defense under section 1788.30 cannot be determined on its merits until this action advances beyond the pleading stage").

The applicability of the pick off exception is also best suited to be analyzed at a later stage in litigation. *See Timlick v. Nat'l Enter. Sys., Inc.*, 247 Cal. Rptr. 3d 575, 578, 585-87 (2019), *as modified* (Cal. Ct. App. June 21, 2019), *review denied* (Cal. Ct. App. Aug. 14, 2019) (analyzing the applicability of the pick off exception after a trial court granted defendant's motion for summary judgment). For instance, in *Timlick*, the California Court of Appeal applied the pick off exception in part because the defendant did "not argue or point to any evidence in the record that it corrected the alleged violations as to the rest of the putative class" on summary judgment. *Id*. at 578. PNC Bank's reliance on *Watkins* is not persuasive either, as that case only appears to deal with an individual claim and not a putative class action. *See generally, Watkins*, 2018 WL 558833, at *1 (discussing the background of the case).[6]

The Court also declines to rule on the issue of whether PNC Bank's tender of the check cured the violations. Allegations about whether Corona cashed the check are not in the SAC. The Court cannot make a determination at this stage as to whether the letter and check "cured the alleged violations." *Afewerki*, No. 2015 WL 13845131, at *3 (stating that "further fact discovery is required to determine whether that correction actually cured the alleged violations").

Finally, the Court denies PNC Bank's argument that Corona breached the DOT by failing to "provide PNC notice and an opportunity to cure" the RFDCPA claims

---

[6] PNC Bank also argues in its reply that they cured Corona's "claim . . . long **before** she sued PNC on September 3, 2020." Reply 4 (emphasis in original). The Court will not consider this argument, as it is "raised for the first time in the reply brief." *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

without prejudice to reassert it later in the litigation. *See* Mot. 22. The notice-and-cure provision states the following:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigation or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

SAC, Ex. A. § 20. PNC Bank argues that Corona's claims "arise[] from 'actions pursuant to this Security Instrument' taken by PNC, *i.e.*, assessing a Speedpay fee." Mot. 22. In cases finding that the plaintiff failed to provide notice and an opportunity to cure, the plaintiff has not provided any type of notice and defendants are generally able to point to an applicable provision in the Security Instrument that covers the conduct. *See Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, *422-23 (9th Cir. 2017); *see also Wilde v. Flagstar Bank FSB*, No. 18CV1370-LAB (BGS), 2019 WL 1099841, at *1, *3 (S.D. Cal. Mar. 8, 2019). In *Giotta*, the Ninth Circuit stated, in an unpublished memorandum disposition, that a notice provision applied to the plaintiffs' claims that arose from fees the lender charged during "property inspections and valuations to protect the Lender's interest in the property" because "the Deed of Trust authorized" these inspections and valuations via a specific provision and allowed the lender "to pass the fees for those services on to the borrower." *Giotta*, 706 F. App'x at *422. Based on the language in the DOT, the Ninth Circuit said that "the instant suit" fell under the notice and cure provision of the DOT and because it was undisputed the plaintiffs did not provide notice, "the district court properly dismissed the case." *Id.* at *422-23. In *Wilde*, the DOT specifically stated that "Lender shall not be required to pay Borrower any interest or earnings on the Funds." *Wilde*, 2019 WL 1099841, at *1. When the plaintiff failed to provide notice about an alleged statutory violation related to

interest payments, the Court found that "his failure to provide notice and an opportunity to cure requires dismissal." *Id.* at \*1, \*3. Here, PNC Bank has not adequately argued which specific provision of the DOT would apply to the RFDCPA claims and has not adequately argued why Corona's notice is insufficient. As such, the Court denies PNC Bank's argument without prejudice as to asserting it later.

Corona adequately alleged her Section 1788.13(e), 1788.14(b), and 1788.17 claims.

### E. UCL (Count III)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiffs bring their claim under the "unlawful" prong of the UCL. *See* FAC ¶ 79. A claim under this prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). Corona's claim borrows from alleged violations of the RFDCPA. SAC ¶ 80. Corona's derivative UCL claim survives PNC Bank's motion. *See Torliatt*, 2020 WL 1904596, at \*5 (declining to dismiss UCL claims that "rise and fall" with the RFDCPA claim).

Corona adequately alleged her UCL claim.

### F. Leave to Amend

Given the Ninth Circuit policy of granting leave to amend with "extreme liberality," *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (internal quotation marks omitted), the Court gives Corona leave to amend her breach of contract claim.

### G. Local Rule 7-3

The Court reminds the parties of their obligation to discuss thoroughly the substance of a contemplated motion before the filing of the motion. C.D. Cal. R. 7-3. The Court is confident that several of the issues presented in this motion could have

been resolved by a good faith conference of counsel. Unnecessary motion practice will not be tolerated in this or any action.

## IV. CONCLUSION

The motion is granted in part and denied in part. The breach of contract claim (Count I) is dismissed with leave to amend. The motion is denied in all other respects.

Corona may file an amended complaint within 14 days of this Order, if she can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order. Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

**IT IS SO ORDERED.**

Dated: March 16, 2021

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE