**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
        kgrombacher@bradleygrombacher.com

Attorneys for Plaintiff, Guadalupe Alvarenga Corona and the Putative Class

*All Additional Counsel Listed on Following Page.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE ALVARENGA CORONA, individually and on behalf of a class of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation; AND DOES 1-100,<br><br>Defendants. | **CASE NO: 2:20-cv-06521-MCS-SPx (aco)**<br>(Assigned for All Purposes to Hon. Mark C. Scarsi, Courtroom 7C)<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>***(Filed concurrently with Declarations of Plaintiff Guadalupe Alvarenga Corona, Jennifer Beliveau and Kiley Lynn Grombacher, Esq. and [Proposed] Order)***<br><br>**Date:  August 16, 2021**<br>**Time:  9:00 a.m.**<br>**CR:     7C** |

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**<u>Additional Counsel for Plaintiff and the Putative Class:</u>**

**BRADLEY GROMBACHER, LLP**
Robert N. Fisher (SBN 302919)
477 Madison Avenue, Suite 6000
New York, NY 10022
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
rfisher@bradleygrombacher.com

**LEXICON LAW, PC**
John R. Habashy, Esq. (SBN 236708)
Tiffany N. Buda, Esq. (SBN 232679)
633 W. 5th Street, 28th Floor
Los Angeles, CA 90071
Tel: (213) 223-5900
Fax: (888) 373-2107
Email:  john@lexiconlaw.com
        tiffany@lexiconlaw.com

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................... 1

II.    BACKGROUND ............................................................................ 2

    A.    Procedural History and Motion Practice ............................... 2

    B.    Discovery…............................................................................ 3

    C.    Mediation & Negotiation ..................................................... 3

III.   OVRVIEW OF SETTLEMENT TERMS ...................................... 3

    A.    Composition of the Proposed Settlement Class ................... 3

    B.    Settlement Consideration ..................................................... 4

    C.    Release by the Settlement Class .......................................... 4

    D.    Attorney's Fees and Service Payment ................................. 4

    E.    Settlement Administrator and Administration Costs ........... 5

    F.    Proposed Notice Plan .......................................................... 5

        1.    Dissemination of Notice ............................................. 5

        2.    Exclusion Procedure ................................................... 5

        3.    Objection Procedure ................................................... 5

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ......... 6

    A.    The Settlement Class Meets the Requirements of Rule 23(a) ............ 6

VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL. 11

    A.    The Proposed Attorneys' Fees and Service Payment Are Reasonable  15

        1.    The Requested Enhancement Award is Reasonable ................. 19

VII.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN .. 20

VIII. CONCLUSION ............................................................................. 22

i

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Adams v. Inter-Con Sec. Sys. Inc.*,
    2007 WL 3225466  (N.D. Cal. Oct. 30, 2007)....................................................16

*Alvarez v. Amerisourcebergen Drug Corporation*,
    19-CV-02253-MCS-KES, Dkt. No. 30............................................................20

*Ambrosia v. Cogent Commun., Inc.*, 3
    12 F.R.D. 544 (N.D. Cal. 2016).....................................................................11

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................10

*Bias v. Wells Fargo & Company*,
    312 F.R.D. 528 (N.D. Cal. 2015)..................................................................12

*Bickley v. Schneider Nat'l, Inc*.,
    WL 4157355 (N.D. Cal. April 25, 2016)......................................................19

*Blum v. Stenson*,
    465 U.S. 886, (1984);...............................................................................22

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co*.,
    12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013), ......................16

*Bostick v. Herbalife Int'l of Am., Inc*.,
    2015 WL 12745798 (C.D. Cal. Aug. 18, 2015).............................................25

*Chavez v. Blue Sky Nat. Bev. Co.*,
    2012 WL 12921300 (N.D. Cal. June 1, 2012)................................................20

*Cohorst v. BRE Props., Inc.*,
    2011 WL 7061923 (S.D. Cal. Nov. 14, 2011)..........................................16, 22

*Cordy v. USS-Posco Indus.*,
    12014 WL 212587 (N.D. Cal. Jan 17, 2014).................................................16

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016))....................................19

*Crommie v. Pub. Utils. Comm.*, 840 F. Supp. 719  (N.D. Cal. 1994).............................19

*Davis v. Cole Haan, Inc.*,
    2015 WL 7015328 (N.D. Cal. Nov. 12, 2015) ...............................................23

*Dilts v. Penske Logistics, L.L.C.*,
    2014 WL 12515159 (S.D. Cal. July 11, 2014) ...................................................... 19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011). ........................................................................................... 13

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    2015 WL 12977077 (N.D. Cal. Aug. 21, 2015) .................................................... 22

*Garcia v. Nationstar Mortgage, LLC*,
    No. 2:15-cv-1808 (W.D. Wash.) ..................................................................... 13, 19

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996) ........................................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998). ....................................................................... 11, 15

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................................. 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................. 20

*In re High-Tech Employee Antitrust Litig.*,
    2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)....................................................... 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................. 20

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................. 25

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
    282 F.R.D. 486  (C.D. Cal. 2012) ......................................................................... 15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 16

*Johnson v. Gen. Mills, Inc.*,
    2013 WL 3213832  (C.D. Cal. June 17, 2013) ..................................................... 23

*Kagan v. Wachovia Sec., L.L.C.*,
    2012 WL 1109987 (N.D. Cal. Apr. 2, 2012) ........................................................ 10

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008)........................................................................... 13

1
2

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 ( 9th Cir. 1975) ..................................................................21

3
4

*Knutson v. Schwan's Home Serv., Inc.*,
   2014 WL 3519064 (S.D. Cal. 2014) .......................................................26

5
6

*Lane v. Facebook, Inc.*,
   696 F. 3d 811(9th Cir. 2012) .................................................................25

7

*Maine State Ret. Sys. V. Countrywide Fin. Corp.*,
   2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ..........................................16

8
9

*Mariscal v. Flagstar Bank*, No.,
   2020 U.S. Dist. LEXIS 151301 (C.D. Cal. Aug. 4, 2020)......................18

10
11

*McWhorter v. Ocwen Loan Servicing, LLC*,
   2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ...................................13, 19

12

*Montesi et al. v. Seterus Inc.*,
   No. 2015CA010910 (Palm Beach County, FL).......................................19

13
14

*Morandi v. Nationstar Mortg., LLC*,
   2021 WL 1398967(C.D. Cal. Apr. 6, 2021). ..........................................17

15
16

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) ...........................................................11

17

*Paz v. AG Adriano Goldschmeid, Inc.*,
2016 WL 4427439 (S.D. Cal. Feb. 29, 2016). ........................................18

18
19

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009). ...........................................................19, 23

20
21

*Rosenburg v. I.B.M.*,
   No. CV06–00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007)......24

22
23

*Ruch v. AM Retail Grp., Inc.*,
   2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)........................................14

24
25

*Sanders v. LoanCare, LLC*,
   2020 WL 8365241 (C.D. Cal. 2020) .................................................14, 20

26

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A*,
   2012 WL 3809123 (S.D. Cal. Sept. 4, 2012)..........................................25

27
28

*Simpao v. Gov't of Guam*,
   369 Fed. Appx. 837 (9th Cir. 2010).......................................................25

*Singer v. Becton Dickinson and Co.,*
   2010 WL 219610 (S.D. Cal. June 1, 2010). ........................................................21

*Spann v. J.C. Penney Corp.,*
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................................................25

*Stetson v. Grissom,*
   821 F.3d 1157 (9th Cir. 2016). .........................................................................21

*Tapia v. Zale Del. Inc.,*
   2017 WL 1399987 (S.D. Cal. April 18, 2017)..................................................24

*Van Vranken v. Atl. Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ..................................................................22

*Vedachalam v. Tata Consultancy Servs., Ltd,*
   2013 WL 3941319 (N.D. Cal. July 18, 2013)..................................................22

*Villalpando v. Exel Direct, Inc.,*
   303 F.R.D. 588 (N.D. Cal. 2014) ....................................................................11

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002); ........................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) .....................................................................................11

*WM. Bolthouse Farms, Inc.,*
   2020 WL 2175352 (E.D. Cal. May 4, 2020) ..................................................12

*Wolin v. Jaguar Land Rover N. Am. LLC,*
   617 F.3d 1168 (9th Cir. 2010). ........................................................................12

*Zeisel v. Diamond Foods, Inc.,*
   2012 WL 4902970 (N.D. Cal. Oct. 16, 2012)..................................................23

**STATUTES**

Fed. R. Civ. P. 23(c)(2)(B..................................................................................24

**RULES**

Fed. R. Civ. P. 23(b)(3). ....................................................................................13

Fed. R. Civ. P. 23(e) ..........................................................................................15

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) .................................................................................15

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 21.633 (2004). ..........................................10

## I.   INTRODUCTION

This is a class action against defendant PNC Bank, N.A. ("PNC" or "Defendant"), on behalf of all persons with a California address who were borrowers on residential mortgage loans serviced by PNC and paid a fee to PNC during the class period for making a loan payment by telephone, interactive voice response system ("IVR"), or the internet (collectively "Pay-to-Pay Fees"), from June 22, 2016 through the present." (Second Amended Complaint ("SAC") (Dkt. No. 25).   By this action, Guadalupe Alvarenga Corona ("Plaintiff") challenged PNC's practice of charging "Pay-to-Pay" fees under California law and sought monetary and injunctive relief.

At present, Plaintiff is pleased to announce that the parties have reached a settlement of this action and that this litigation has therefore accomplished both of its aims.   The parties have negotiated a settlement which, if approved, will provide for a $661,793.51 common fund[1].  Class Members need not submit a claim and will be compensated *pro rata* according to the dollar amount of the Pay-to-Pay Fees they were charged.

An objective evaluation of the Settlement confirms that the relief negotiated by the Parties is fair and reasonable.  The Settlement was negotiated by the Parties at arm's length during mediation with Jeff Kichaven, an experienced and chambers ranked mediator, and the Settlement confers substantial benefits to Class Members.[2] By settling now rather than proceeding to trial, Class Members will not have to wait for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

---

[1]  Based on its responses to discovery, PNC ceased charging Pay-to-Pay fees to California consumers on December 11, 2020.

[2] The resume for Mr. Kichaven is attached to the Grombacher Decl. as **Exhibit B**.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval and falls within the range of reasonableness and the size of the fund as a proportion to the total fees collected from the class is consistent with settlements in similar actions. Accordingly, Plaintiff respectfully request that this Court grant preliminary approval of the Settlement Agreement.

## II.   BACKGROUND

This class action arises from Pay-to-Pay fees charged by Defendant. Plaintiffs represent a putative class of California homeowners who were charged "convenience fees" to make payments online or over the phone. Plaintiffs contend that under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" or the "Rosenthal Act"), the fees are illegal unless they are expressly authorized by a statute or by the mortgage contract and that the fees were not so authorized. Plaintiff contends that the fees are not so authorized and therefore they are illegal.

The Class Period is June 22, 2016 to March 16, 2021 ("Class Period"). PNC has indicated that it ceased charging Pay-to-Pay fees on December 11, 2020.

### A.   Procedural History and Motion Practice

Plaintiff filed her Complaint on June 22, 2020 in the Superior Court for the County of Los Angeles. Defendant removed the case to this Court on July 22, 2020. (Dkt No. 1). Plaintiff file a First Amended Complaint on September 3, 2020. (Dkt No. 13). The First Amended Complaint asserted claims under the RFDCPA and Unfair Competition Law, Bus. & Prof. Code §§ 17200. *et seq*. ("UCL") as well as a claim for breach of contract.

On October 13, 2020, PNC moved to dismiss the Complaint. (Dkt No. 21). On November 3, 2020 Plaintiff filed a Seconded Amended Complaint, asserting the same claims, and clarifying and expanding upon the First Amended Complaint. (Dkt No. 25).

On December 16, 2020, PNC filed a motion to dismiss the Second Amended Complaint.  (Dkt No. 32).  The Court dismissed Plaintiff's breach of contract claim with leave to amend and denied the motion in all other respects.  (Dkt No. 45).  PNC answered the Second Amended Complaint on April 21, 2021. (Dkt No. 49).

### B.    Discovery

On April 9, 2021, PNC served responses to Plaintiff's discovery requests. PNC's responses included, among other things, interrogatory responses specifying the total amount of Pay-to-Pay fees charged to class members during the relevant time period -- $2,005,434.88 and that PNC ceased charging Pay-to-Pay fees on December 11, 2020.  PNC also indicated that the class is comprised of 26,212 members.  The parties also met and conferred on several occasions regarding discovery, including managing class discovery.

### C.    Mediation & Negotiation

Armed with this information, and through mediation conducted on May 24, 2021 with the experienced and Chambers ranked mediator Jeff Kichaven, Plaintiff was able to reach an agreement in principle on a settlement for a $661,793.51 common fund representing 33% of the total amount of fees charged to the class.

## III.    OVERVIEW OF SETTLEMENT TERMS

### A.    Composition of the Proposed Settlement Class

The settlement class is comprised of:

All persons who were borrowers on residential mortgage loans serviced by PNC and secured by residential real property located in the State of California who, during the Class Period, paid at least one fee to PNC for making a loan payment by telephone, interactive voice response system, or the internet, which PNC has not refunded.

**Exhibit A** to Declaration of Kiley L. Grombacher ("Grombacher Decl.") at ¶4.

The Class period runs from June 22, 2016 to March 16, 2021.

**B.    Settlement Consideration**

The Settlement fund is $661,793.51.  **Exhibit A** to Grombacher Decl. at ¶¶4 and 25.

**C.    Release by the Settlement Class**

Pursuant to the terms of the settlement agreement, Plaintiff and the class agree to release all claims, demands, damages, causes of action, rights, attorneys' fees and expenses whatsoever, that arise from or relate in any way to the facts, allegations and disputes that are the subject matter of the Action, including any claims of any nature whatsoever in law or equity which were, or could have been asserted, in the Action or that arise out of or relate in any to the collection or attempted collection of Fees including but not limited to, statutory or regulatory violations, state or federal debt collection claims (including but not limited to violations of the Fair Debt Collection Practices Act and the California Rosenthal Fair Debt Collection Practices Act), unfair, abusive or deceptive act or practice claims, tort, contract, or other common law claims, or violations of any other related or comparable federal, state, or local law, statute or regulation, and any damages (including any compensatory damages, special damages, consequential damages, punitive damages, statutory penalties, attorneys' fees, costs) related thereto, directly or indirectly, and any equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether accrued or unaccrued, known or unknown. **Exhibit A** to Grombacher Decl. at ¶4.

**D.    Attorney's Fees and Service Payment**

The Settlement agreement provides for a service award subject to Court approval of up to $5,000.  **Exhibit A** to Grombacher Decl. at ¶45.  Plaintiff's counsel seeks fees of 30% of the Settlement Fund after payment of the Settlement Administrator and service payment.  Plaintiff's counsel also seeks reimbursement of costs from the Settlement Fund totaling approximately $5,000.

///

### E. Settlement Administrator and Administration Costs

Plaintiff's counsel has retained KCC Class Action Services, LLC ("KCC") to administer the settlement.  The Settlement Administrator's fee of approximately $70,000 will be paid from the Settlement Fund.

### F. Proposed Notice Plan

#### 1. Dissemination of Notice

Notice shall be mailed by first class mail to the settlement class members. The Settlement Administrator will also establish and maintain a website for purposes of administering the settlement.

#### 2. Exclusion Procedure

A Class Member may submit a written request for exclusion by first class U.S. mail to the United States Post Office Box established and maintained by the Settlement Administrator.  The deadline to submit a request for exclusion from the settlement will be no less 90 days after entry of the Preliminary Approval Order. Anyone submitting a request for exclusion must: (a) set forth his/her full name and current address; (b) set forth his/her PNC loan number; and (c) specifically state his/her desire to be excluded from the settlement.

Any timely written request for exclusion submitted by any co-borrower or joint borrower on a given loan will have the effect of excluding all other co-borrowers or joint borrowers on that loan, none of whom thereafter will be treated as a Settlement Class Member.

#### 3. Objection Procedure

Any Class Member who wishes to object to the settlement must send a written objection ("Objection") to the Settlement Administrator by first class U.S. mail to the United States Post Office box established and maintained by the Settlement Administrator.  All Objections must also be filed with the Court and served on Class Counsel and on Counsel for PNC.  The deadline to submit a request for exclusion from the settlement will be no less than 90 days after entry of the

Preliminary Approval Order. Only Class Members may object to the Settlement. A Class Member who submits a request for exclusion shall not be entitled to object to the Settlement, and if both a request for exclusion and an Objection are submitted, the request for exclusion shall control, and the Objection shall be deemed invalid.

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In order to grant preliminary approval, the Court must first determine that the proposed settlement class is appropriate for certification. To do so, the class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); Manual for Complex Litigation (Fourth) § 21.633 (2004).

Here, Plaintiff seeks certification under Rule 23(b)(3) and thus must demonstrate that the proposed class and proposed class representative meet six requirements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation; (5) predominance of common legal or fact questions; and (6) superiority. Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3); see also *Kagan v. Wachovia Sec., L.L.C.*, 09-cv-5337-SC, 2012 WL 1109987, at *4-5 (N.D. Cal. Apr. 2, 2012). The proposed class meets each of these elements.

### A.     The Settlement Class Meets the Requirements of Rule 23(a)

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable," but not necessarily impossible. *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). Here, the proposed class is sufficiently numerous because there are approximately 26,212 proposed class members. *See Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-606 (N.D. Cal. 2014) ("[C]ourts have routinely found the numerosity requirement satisfied when the class compromises 40 or more members.").

Second, the proposed class shares common questions of law and fact. Commonality is construed permissively and is demonstrated when the claims of all

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  class members "depend upon a common contention." *Wal-Mart Stores, Inc. v.*
2  *Dukes*, 131 S. Ct. 2541, 2545, 2557 (2011) (citation omitted); *see also Hanlon v.*
3  *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the claims of class
4  members stem from the same factual and legal questions, including whether
5  Defendant had a policy and/or practice of collecting Pay-to-Pay fees and whether
6  Defendant's practice of collecting Pay-to-Pay fees violates the RFCPDA.  These
7  common questions--and there are many more--are sufficient to establish
8  commonality. *Dukes*, 131 S. Ct. at 2556 ("[E]ven a single common question will
9  do"); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) ("[F]or the
10  commonality requirement to be met, there must only be one single issue common
11  to the proposed class.").

12       Third, Plaintiff's claims are typical of class member claims. A plaintiff's
13  claim is typical where it arises from the same course of conduct that gives rise to
14  the claims of other class members and is based on the same legal theory. *See*
15  *Ambrosia v. Cogent Commun., Inc.,* 312 F.R.D. 544, 554 (N.D. Cal. 2016) (noting
16  that typicality emphasizes "whether [named plaintiffs] other members have the
17  same or similar injury...and whether other class members have been injured but the
18  same course of conduct.") (citations omitted). Ultimately, this requirement ensures
19  that "the interest of the named representative aligns with the interests of the class."
20  *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

21       Here, Plaintiff's claims are typical of the Settlement Class Members because
22  they arise from the same course of conduct: charging borrowers a fee to make
23  payments.  To meet typicality, a claim or defense is not required to be identical, but
24  rather "reasonably coextensive" with those of the absent class members. *Felix v.*
25  *WM. Bolthouse Farms, Inc.,* No.: 1:19-cv-00312-AWI-JLT, 2020 WL 2175352, at
26  *5 (E.D. Cal. May 4, 2020) (quoting *Hanlon*, 150 F.3d at 1020). "The test of
27  typicality is whether other members have the same or similar injury, whether the
28  action is based on conduct which is not unique to the named plaintiffs, and whether

other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Bias v. Wells Fargo & Company*, 312 F.R.D. 528, 537 (N.D. Cal. 2015) (typicality was met where the named Plaintiffs, like class members, were all charged for marked-up broker price opinions by mortgage company).

Fourth, Plaintiff and proposed class counsel have and will continue to adequately represent the class. For adequacy, the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Appointing a plaintiff with typical claims who has retained adequate counsel is usually sufficient. *Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class). Here, Plaintiff shares the same interest in securing relief for her claims in this case as every other class member - since they are harmed in the same way - and there is no evidence of any conflict of interest. Plaintiff has demonstrated her continued willingness to vigorously prosecute this case. (Grombacher Decl. ¶¶59-62.)   Further, as discussed below, Plaintiff has retained adequate counsel. *See, e.g., Kanawi v. Bechtel Corp*., 254 F.R.D. 102, 111 (N.D. Cal. 2008) (finding adequacy met where plaintiffs "demonstrated their commitment to the action" and their attorneys were "qualified to represent the class").

## B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The proposed class satisfies the predominance requirement. Courts favor

8

certification where, as here, "the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. The predominance requirement tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.* (citing *Amchem*, 521 U.S. at 623-24). Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Plaintiff's causes of action all hinge on the same central issues: (1) whether Defendant had a policy or practice of charging Pay-to-Pay Fees; (2) Whether Defendant violated the Rosenthal Act by charging Pay-to-Pay Fees; (3) whether Defendant violated the UCL; and (4) whether Plaintiff and the Class was damaged by Defendant's conduct. Plaintiff's claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by class members' mortgages or permitted by law.

Courts have certified claims similar to these for settlement under Rule 23. *See McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *1 (N.D. Ala. Aug. 1, 2019) (noting that claims had been certified for settlement purposes in Fair Debt Collection Practices Act (FDCPA) case regarding Pay-to-Pay fees); *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash.), Dkt. 122 (same); *Sanders v. LoanCare, LLC*, No. CV 18-9376 PA (RAOX), 2020 WL 8365241 (C.D. Cal. Dec. 4, 2020) (certifying similar claims under the Rosenthal Act and UCL for settlement purposes).

In addition, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems...." *Amchem*, 521 U.S. at 620 (internal citations omitted). "[A]ny manageability problems that may have existed are eliminated by the settlement." *Ruch v. AM Retail Grp., Inc.*, 14-cv-05352-MEJ, 2016 WL 1161453, at *10 (N.D. Cal. Mar. 24, 2016).

With respect to superiority, Plaintiff must show that a class action is the

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

"most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76; *see also Valentino*, 97 F.3d at 1234-35 (finding a class action is superior when it will reduce the costs inherent in litigation and "no realistic alternative exists" for class members). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. Here, the proposed class is comprised of over 26,000 members each of whom have relatively small individual claims. By providing swift resolution of common claims in a way that would not be possible on an individual basis, a class action is the superior method of adjudication. *See Alvarez v. Amerisourcebergen Drug Corporation*, 19-CV-02253-MCS-KES, Dkt. No. 30 at 6 (concluding that superiority element was satisfied because "[t]he claims here do not appear to support recoveries that would incentivize individual action.").

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel...[who] must fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court considers: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the type of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); see, e.g., *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 492 (C.D. Cal. 2012). The parties seek the appointment of Kiley Grombacher, Marcus Bradley and Robert Fisher of Bradley/Grombacher LLP, and John Habashy of Lexicon Law, as class counsel. Proposed class counsel readily satisfy the criteria of Rule 23(g).

Bradley/Grombacher LLP and Lexicon Law have devoted--and will continue to devote--a time and effort to this litigation, beginning with its initial investigation of Plaintiff's allegations. (Grombacher Decl. ¶10.) Through both formal and informal discovery, counsel have sought the information needed to develop

1   Plaintiff's claims and represent the class. (*Id*.) Further, they have extensive
2   experience in similar complex litigation and have been appointed class counsel in
3   complex class actions, many of them in this District. (*See id*.)

**VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

4
5           After determining that the proposed class should be certified, the Court must
6   determine whether the Settlement warrants approval. The procedure for review of
7   a proposed settlement is a well-established two-step process: preliminary and final
8   approval. Fed. R. Civ. P. 23(e); *see also* Herbert Newberg & Alba Conte, Newberg
9   on Class Actions § 11.25 at 3839 (4th ed. 2002). The first step is a preliminary, pre-
10  notification hearing to ensure that the settlement is not "unacceptable at the outset."
11  *Id.*

12          "Review of the settlement is meant to be 'extremely limited' and should
13  consider the settlement as a whole." *Alvarez*, 19-CV-02253-MCS-KES, Dkt. No.
14  30 at 2 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

15          Courts grant preliminary approval where: "(1) the proposed settlement
16  appears to be the product of serious, informed non-collusive negotiations, (2) has
17  no obvious deficiencies, (3) does not improperly grant preferential treatment to
18  class representatives or segments of the class, and (4) falls within the range of
19  possible approval." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079
20  (N.D. Cal. 2007) (quoting Manual for Complex Litigation (Second) § 30.44 (1985)).
21  *See also Cordy v. USS-Posco Indus.,* 12-cv-00553-JST, 2014 WL 212587, at *2
22  (N.D. Cal. Jan 17, 2014) (quoting *Tableware).*

23          First, settlements that are the result of hard-fought litigation and arm's-length
24  negotiations among experienced counsel, such as this one, are "entitled to an initial
25  presumption of fairness." *In re High-Tech Employee Antitrust Litig*., 11-cv-2509,
26  2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (internal citations and quotations
27  omitted); *see also Harris v. Vector Mktg. Corp*., 08-cv-5198, 2011 WL 1627973, at
28  *8 (N.D. Cal. Apr. 29, 2011).  Settlement negotiations are generally found to be

non-collusive when reached with the assistance of a third-party neutral, *see, e.g.*, *Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, 12-cv-05259-JST, 2013 WL 6145706, at *7 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *See Moshogiannis*, 2012 WL 423860, at *5 (holding that settlement was fair, reasonable, and adequate where, inter alia, "the parties conducted a significant amount of informal discovery....").

Here, the settlement is the result of intensive, arms' length negotiation between experienced attorneys who are familiar with class action litigation and the legal and factual issues in this Action. *See, e.g., Maine State Ret. Sys. V. Countrywide Fin. Corp.*, No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013) (citing Newberg on Class Actions, § 11.41 (4th ed. 2013)). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). *See also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of an arms'-length, non-collusive, negotiated resolution." (internal citation and quotation marks omitted)).

Before filing the Complaint, Plaintiff's Counsel spent many hours investigating potential claims against PNC. Grombacher Decl. ¶46. Class Counsel interviewed potential plaintiffs and gathered information about PNC's conduct and its impact on consumers. *Id.* This information was essential to Plaintiff's Counsel's ability to evaluate the risks of this litigation and the benefits to the Class. Plaintiff's Counsel also expended significant resources researching and developing the legal claims at issue, as well as other settlements of similar cases. Based on its foundation

of knowledge from other related litigation and its investigation into this specific case, Plaintiff's Counsel was well positioned to evaluate the strengths and weaknesses of Plaintiff's and the Class's claims, and the appropriate basis upon which to settle them.

Second, the Settlement is free of defects. A court is likely to find a settlement free from obvious deficiencies when it provides a real, immediate monetary benefit to the class despite numerous risks. *See Tableware*, 484 F. Supp. 2d. at 1080 (finding settlement providing a $500,000 fund free of obvious defects in light of "the anticipated expense and complexity of further litigation"). *See also In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (finding that a settlement for about one-sixth of the potential recovery was fair and adequate after accounting for "the difficulties in proving the case").

Moreover, the Settlement is fair, reasonable and adequate in light of the strengths and risks of Plaintiff's case. Here, the Court has not ruled on the question of whether PNC's attempt to cure Plaintiff's claim bar her from further pursuing litigation. (*See* Dkt No. 45 at 11-12) Additionally, there are other risks to the class as this Court recently denied class certification in a similar case where certification was not sought for settlement purposes only. *Morandi v. Nationstar Mortg., LLC*, No. 219CV06334MCSMAA, 2021 WL 1398967, at *6 (C.D. Cal. Apr. 6, 2021). Plaintiff maintains that a class is certifiable even if not for settlement purposes only and that the *Morandi* decision is distinguishable. Nonetheless, this decision represents a clear risk to the class if continued litigation were pursued instead of reaching settlement. Moreover, there are potential defenses on the merits, including that Rosenthal Act claims may be limited to payments made when "the debt underlying the complaint is immediately due or past due, or the defendant has taken action to collect the debt as if it was past due." *Mariscal v. Flagstar Bank*, No., 2020 U.S. Dist. LEXIS 151301, at *7-8 (C.D. Cal. Aug. 4, 2020). Here, Plaintiff maintains that the mortgage payments for which fees were paid were due or past

due, but this represents another litigation risk to the class.  Based on the foregoing, the risks to Plaintiff and the class of proceeding with the litigation are manifest.

These risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. This case is settling in its early stages; if the Settlement is not approved, the parties will likely need to litigate through multiple dispositive motions and a motion for class certification. *Id.* ¶ 10. The litigation would likely take years to resolve and involve expensive expert discovery. *Id.* ¶ 11. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Class Members. *Id*. Instead, there would be multiple points at which the Class's claims could be narrowed or dismissed. *Id.* ¶¶ 10-11. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.,* No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors preliminary approval.

Third, the Settlement does not provide preferential treatment to any individual class member.  Payments will be made on a pro rata basis depending on the number of Pay-to-Pay Fees each Class Member paid. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Pay-to-Pay Fees they were charged. See Fed. R. Civ. P. 23(e)(2)(D). And, the proposed method of distributing relief is effective. See Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the settlement. See Grombacher Decl. ¶¶63-64.  Class Members are not required to fill out an unwieldy claim form or even submit claims at all. And the Settlement Administrator will mail checks to the Class Members, after running their addresses through the National Change of Address database.

Fourth, the Settlement falls well within the range of possible approval. "In determining whether the proposed settlement falls within the range of

reasonableness, the Court evaluates the relative strengths and weaknesses of the Plaintiff's case, and balances Plaintiff's expected recovery against the value of the settlement offer." *Bickley v. Schneider Nat'l, Inc*., 08-cv-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. April 25, 2016) (citing *Cotter v. Lyft, Inc*., 176 F. Supp. 3d 930, 935, (N.D. Cal. 2016)). Generally, satisfaction of the previous three factors is sufficient to satisfy this prong. See *Dilts v. Penske Logistics, L.L.C*., 08-cv-0318-CAB, 2014 WL 12515159, at *3 (S.D. Cal. July 11, 2014) (finding that the settlement fell within the range of possible approval "given the fact that the settlement [was] the product of serious, informed and non-collusive negotiations, ha[d] no obvious defects, and [did] not improperly grant preferential treatment").

Here, the Settlement Fund represents 33% of damages. This settlement is in line with other settlements in similar cases involving Pay-to-Pay Fees. *See, e.g.*, Final Order and Judgment, *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-1831 (N.D. Ala.), Dkt. 71 ($9.7 million common fund representing 30% of damages in Pay-to-Pay Fee case); Final Order and Judgment, *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash.), Dkt. 122 ($3.875 million common fund representing approximately one third of damages in Pay-to-Pay Fee case); *Montesi et al. v. Seterus Inc*., No. 2015CA010910 (Palm Beach County, FL) ($1.75 million common fund representing 35% of damages in Pay-to-Pay Fee case); *Sanders v. LoanCare, LLC*, No. CV 18-9376 PA (RAOX), 2020 WL 8365241 (C.D. Cal. 2020) ($3.4 million fund representing 38.64% of the fees.).   *See also Alvarez v. Amerisourcebergen Drug Corporation*, 19-CV-02253-MCS-KES, Dkt. No. 30 at 6 (approving settlement amount in light of "obstacles not only with certifying the class but also surviving summary judgment on all claims and ultimately prevailing at trial").

### A. The Proposed Attorneys' Fees and Service Payment Are Reasonable

Plaintiff's Counsel will file a separate motion seeking approval of Attorneys' Fees and Expenses and a Service Award for Plaintiff, and the amounts that they intend

1   to seek are also reasonable and fair. The Settlement Agreement authorizes Class

2   Counsel to seek an award of up to one third of the Settlement Fund, and authorizes

3   Plaintiff to seek a modest payment of up to $5,000 for her service.

4       1.   The Proposed Fees Are Reasonable

5       In the Ninth Circuit, district courts may "choose either the percentage-of-the-

6   fund or the lodestar method" in determining the appropriate amount of attorney's fees.

7   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1046 (9th Cir. 2002); *see also In re Online*

8   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "Under the percentage-

9   of-recovery method, the attorneys' fees equal some percentage of the common

10  settlement fund; in [the Ninth C]ircuit, the benchmark percentage is 25%" (Id. at 948)

11  (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).

12  Conversely, the "lodestar method requires 'multiplying the number of hours [Class

13  Counsel]... reasonably expended on the litigation...by a reasonable hourly rate for the

14  region and for the experience of the lawyer.' " *Id.* (quoting *In re Bluetooth*, 654 F.3d

15  at 941). The lodestar method is generally preferred when there is no "common fund"

16  or the benefits of the settlement cannot be "monetized with a reasonable degree of

17  certainty." *Chavez v. Blue Sky Nat. Bev. Co.,* No. 06-cv-06609-JSW, 2012 WL

18  12921300, at *3 (N.D. Cal. June 1, 2012) (citation omitted). But "[r]egardless of

19  whether the court uses the percentage approach or the lodestar approach, the main

20  inquiry is whether the end result is reasonable." *Singer v. Becton Dickinson and Co.,*

21  2010 WL 219610, at *8 (S.D. Cal. June 1, 2010).

22      Regardless of the method used, the Ninth Circuit has directed courts to consider

23  several factors when assessing the reasonableness of a fee award, including (1) the

24  results achieved for the class; (2) the complexity of the case and the risk of and expense

25  to counsel of litigating it; (3) the skill, experience, and performance of counsel (both

26  sides); (4) the contingent nature of the fee; and (5) fees awarded in comparable cases.

27  See *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). *See also*

28  *Vizcaino*, 290 F.3d at 1048-49; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir.

2000); *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016). Each factor counsels in favor of approving the requested fee award.

Here, the results achieved for the class cannot be denied.

The second factor is the possibility that continued litigation may result in a lesser or no benefit to the class, particularly where complicated legal and factual issues are involved. See *Vizcaino*, 290 F.3d at 1048. Achieving the result in this case was by no means a "slam dunk," which is usually what courts require before awarding fees less than the percentage benchmark or applying a negative multiplier. See id. (discussing riskiness of litigation as a key factor in determining fee award).

If litigation had continued in this case, PNC would have reasserted the defenses outlined in its motion to dismiss, including the contention--which this Court declined to rule on in the motion to dismiss--that Plaintiff's claims were barred due to cure. (Grombacher Decl. ¶ 31; *see also* Dkt No. 45 at 11-12.)  Even if Plaintiff cleared those initial--not to mention, potentially dispositive--hurdles, PNC would challenge any motion for class certification. (Grombacher Decl. ¶ 31.) Likewise, if the case proceeded to trial, —the possibility of losing on the merits would stand between the class and ultimate recovery. (*Id.*) And, given the amounts at stake, regardless of the outcome at class certification or trial, the losing party would be almost guaranteed to appeal, thus further delaying and potentially foreclosing any relief to the class.

Plaintiff's counsel initiated this action aware of these risks, and nonetheless aggressively prosecuted the class's claims in the face of substantial opposition by experienced defense counsel, investing hours of attorney time and thousands of dollars in hard costs. (Grombacher Decl. ¶52.) In the end, after balancing the strength of the class's claims against the legal, factual and procedural obstacles ahead, it is clear that there was significant risk that the class (and with them, Plaintiff's Counsel) may have recovered substantially less, if anything at all, thus further supporting the reasonableness of the requested fee award.

The Court should also consider the experience, skill and reputation of the

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

attorneys in the lodestar calculation. *Blum v. Stenson*, 465 U.S. 886, 898-900, (1984); *Crommie v. Pub. Utils. Comm*., 840 F. Supp. 719, 725 (N.D. Cal. 1994). Thus, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig*., No. 02-ml-1475, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. *Cohorst v. BRE Props., Inc.*, No. 10-cv-2666, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011). Here, it is clear that both parties were represented by able and skilled counsel .(Grombacher Decl. at ¶¶38-45.)

Finally, the fee request is in line with fee awards in similar cases.  Many cases have found that upwards of 30% of the immediate monetary benefits, *i.e.*, the common fund, is an appropriate range, particularly where that fund is less than ten million. *See*, *e.g.*, *Galeener v. Source Refrigeration & HVAC, Inc*., No. 3:13-CV-04960-VC, 2015 WL 12977077, at *1 (N.D. Cal. Aug. 21, 2015) ("'[I]n light of the many cases in this circuit that have granted fee awards of 30% or more', it is 'well within the usual range of percentages awarded.'") (quoting *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) and collecting cases awarding 30% or more); *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (collecting cases); *see also Johnson v. Gen. Mills, Inc*., 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund)[3].

---

[3] The Parties negotiated Settlement is not conditioned on the Court's approval of Plaintiff's request for 30% of the Settlement Fund after payment of the Settlement Administrator and service payment, or any fee amount generally.  The Parties agree that the reasonableness of Plaintiff's fee request is better determined in the context of the formal application for fees and costs, which will be filed in advance of final approval.  Accordingly, the Parties have agreed and respectfully request that any concerns the Court may have regarding Plaintiff's request for fees, costs, or service payments not delay preliminary approval.

### 1.   The Requested Enhancement Award is Reasonable

The Court should also approve the requested service payment. "Incentive awards are fairly typical in class action cases [to] . . . compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Here, PNC has agreed to an incentive award of $5,000 to Plaintiff.

Approving incentive awards should be based on several factors, including: the actions taken by the Plaintiff to protect class interests; the degree to which the class benefited from those actions; the time and effort the plaintiff expended; the risk to the plaintiff in commencing a class action, financial or otherwise; the notoriety and personal difficulties encountered; the duration of the litigation; and the personal benefit, or lack thereof, enjoyed by the plaintiff as a result of the litigation. *Staton*, 327 F.3d at 977. See also *Davis v. Cole Haan, Inc.,* No. 11-cv-01826-JSW, 2015 WL 7015328 (N.D. Cal. Nov. 12, 2015) ($2,000 incentive award deemed fair given involvement of representative); *Zeisel v. Diamond Foods, Inc.,* No. 10-cv-01192-JSW, 2012 WL 4902970 (N.D. Cal. Oct. 16, 2012) ($3,000 incentive award is fair given involvement of the representative). These factors confirm the reasonableness of the proposed incentive awards here.

Plaintiff voluntarily assumed the responsibilities of bringing and prosecuting the action on behalf of other individuals. As a result of her willingness to step forward and her refusal to settle on an individual basis, the class members will receive a full recovery. In particular, Plaintiff declined to accept PNC's efforts to cure or settle on an individual basis.  PNC tendered a check to Plaintiff in the amount of $1790.71, in June of 2020, which Plaintiff did not cash.  (Dkt. No. 32-5; Dkt. No. 33 at 23).  Plaintiff took time to locate, interview and retain reputable, experienced counsel, and showed a readiness and willingness to help and protect

the class's interests, including by foregoing an immediate payment to pursue the class claims and risking the prospect that she would not be able to recover on her claims.

## VII.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

The parties' proposed notice plan is formulated to conform with the procedural and substantive requirements of Rule 23. Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. See Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. See *Tapia v. Zale Del. Inc.*, No. 13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. April 18, 2017); see also *Rosenburg v. I.B.M.*, No. CV06–00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (stating that notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

Notice of the settlement is to be provided directly to the members of the putative Settlement Class by first class mail and/or email.  When available, direct mail notice is generally considered the "best notice practicable." *See Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838-39 (9th Cir. 2010) (holding potential class members received "best notice practicable under the circumstances" when they received direct mail notice to their last known addresses).  The Ninth Circuit has approved hybrid notice mechanisms using email as the first mechanism of notice and sending a post card notice for class members whose email address is unavailable, as proposed here. *See In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 946 (9th Cir. 2015) ("The notice provided in this settlement, in both mail and email

form, was sufficient under the Constitution and Rule 23(e)").  *See also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) ("For all settlement class members whose Email Notice was not deliverable, or for whom JCPenney does not have an email address, a Post–Card Notice will be mailed by first class mail."); *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV1302488BROSHX, 2015 WL 12745798, at *6-7 (C.D. Cal. Aug. 18, 2015) (overruling objection to hybrid email and mail notice approach).    Moreover, the substance of the notice will fully apprise class members of their rights. Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc*., 696 F. 3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.,* 563 F. 3d 948, 962 (9th Cir. 2009)) (alteration in original).

The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the settlement website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This approach to notice is adequate. *See, e.g., Sarabri v. Weltman, Weinberg & Reis Co., L.P.A, No. 10cv1777 AJB* (NLS), 2012 WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (approving mailed notice where notice would include the settlement website with a full settlement details and the claim administrator's toll free number); *Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5 (S.D. Cal. 2014) (same). This information undoubtedly provides "sufficient detail" to allow class members with adverse viewpoints to conduct further investigation and "come forward to be heard." *Lane*, 696 F.3d at 826 (holding the sufficient detail standard "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims"). Accordingly, this notice program will fully apprise Class Members of their rights under Rule 23(e) and should be approved.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court preliminarily approve the Settlement, enter the Preliminary Approval Order, appoint her as Class Representative, appoint Bradley/Grombacher LLP and Lexicon Law as Class Counsel, direct that Notice be distributed to the Settlement Class, and schedule a Fairness Hearing.

Dated:  July 7, 2021                     **BRADLEY/GROMBACHER, LLP**
                                         **LEXICON LAW, PC**

                                         By:  /s/ Kiley Lynn Grombacher
                                               Marcus J. Bradley, Esq.
                                               Kiley Lynn Grombacher, Esq
                                               Robert Neil Fisher, Esq.
                                               John R. Habashy, Esq.
                                               *Attorneys for Plaintiff*