**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:  (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
         kgrombacher@bradleygrombacher.com

Attorneys for Plaintiff, Guadalupe Alvarenga Corona and the Putative Class

*All Additional Counsel Listed on Following Page.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE ALVARENGA CORONA, individually and on behalf of a class of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation; AND DOES 1-100,<br><br>Defendants. | **CASE NO: 2:20-cv-06521-MCS-SPx (aco)**<br>(Assigned for All Purposes to Hon. Mark C. Scarsi, Courtroom 7C)<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>***(Filed concurrently with Declarations of Plaintiff Guadalupe Alvarenga Corona, Sharon Howard and Kiley Lynn Grombacher, Esq. and [Proposed] Order)***<br><br>**Date:  January 24, 2022**<br>**Time: 9:00 a.m.**<br>**Courtroom:  7C, 350 W First St.**<br>**                    Los Angeles** |

**Additional Counsel for Plaintiff and the Putative Class:**

**LEXICON LAW, PC**
John R. Habashy, Esq. (SBN 236708)
Tiffany N. Buda, Esq. (SBN 232679)
633 W. 5th Street, 28th Floor
Los Angeles, CA 90071
Tel: (213) 223-5900
Fax: (888) 373-2107
Email:  john@lexiconlaw.com
          tiffany@lexiconlaw.com

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 24, 2022 at 9:00 a.m. or as soon thereafter as it may be heard, in Courtroom 7C of the above-entitled court at 350 W First St., Los Angeles, Plaintiff Guadalupe Alvarenga Corona ("Plaintiff"), on behalf of HERSELF and all members of the Settlement Class, will respectfully move this Court for orders, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) granting final approval of the proposed Settlement of the Action; and (2) approving the proposed Plan of Allocation for the net proceeds of the Settlement.

This motion is supported by the following memorandum of points and authorities, the accompanying Declaration of Kiley L. Grombacher, ("Grombacher Decl.") the Declaration of Plaintiff Guadalupe Alvarenga Corona ("Plaintiff Decl."), the Declaration of Sharon Howard ("Howard Decl."), the Settlement dated July 7, 2021, (the "Settlement Agreement and Release"), all other pleadings and matters of record, and such additional evidence and testimony as may be presented before, at, or after the hearing.

A proposed order will be submitted after the December 8, 2021 deadline for requesting exclusion or objecting has passed.

Dated: December 1, 2021          Respectfully submitted,

**BRADLEY/GROMBACHER, LLP**
**LEXICON LAW, PC**

By: /s/ Kiley Lynn Grombacher
     Marcus J. Bradley, Esq.
     Kiley Lynn Grombacher, Esq.
     John R. Habashy, Esq.
     *Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................. 1

II.    SUMMARY OF RELEVANT FACTS .................................................... 2

     A.    Procedural History and Motion Practice .................................... 2

     B.    Discovery .......................................................................................... 3

     C.    Mediation & Negotiation ............................................................ 3

III.   OVERVIEW OF SETTLEMENT TERMS .......................................... 3

     A.    Composition of the Proposed Settlement Class ......................... 3

     B.    Settlement Consideration .............................................................. 4

     C.    Release by the Settlement Class .................................................. 4

     D.    Attorney's Fees and Service Payment ........................................ 4

     E.    Settlement Administrator and Administration Costs ................. 5

IV.   NOTICE WAS PROVIDED IN ACCORDANCE WITH THE COURT'S
     PRELIMINARY APPROVAL ORDER AND CLASS MEMBERS HAVE
     RESPONDED FAVORABLY ................................................................ 5

          1.    Dissemination of Notice .................................................. 5

          2.    Requests for Exclusion ................................... ............. 5

          3.    There Have Been No Objections Filed By Class Members ................. 6

          4.    Disputes ........................................................................... 6

V.    LEGAL STANDARD FOR FINAL APPROVAL ................................ 6

VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ... 7

     A.    There Is a Presumption of Fairness ............................................ 8

          1.    The Settlement was negotiated at arm's length. .................. 8

          2.    The Settlement followed extensive investigation and discovery. ........... 9

          3.    Experienced Counsel Negotiated the Settlement .................... 9

          4.    The Settlement Is Adequate ............................................. 9

     B.    The *Churchill* Factors Support the A Finding of Fairness ........ 10

          1.    The Settlement Is Fair, Reasonable and Adequate In Light
             Of The Strengths And Risks Of Plaintiff's Case ................. 10

          2.    The Settlement Confers Real Value on Class Members ......... 11

          3.    The Class Member Have Responded Favorably to the Settlement ..... 12

     C.    CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ......... 13

V.    CONCLUSION .................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Adams v. Inter-Con Sec. Sys. Inc.*,
    No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)...............................................8

*Alvarez v. Amerisourcebergen Drug Corporation*,
    19-CV-02253-MCS-KES, Dkt. No. 30 ...................................................................... 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................... 7,3

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...............................................................................5

*Cohorst v. BRE Props.*,
    No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 9, 2011) ...............................9

*De Leon v. Ricoh USA, Inc.*,
    No. 18-cv-03725-JSC, 2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) .......................... 14

*Garcia v. Nationstar Mortgage, LLC*,
    No. 2:15-cv-1808 (W.D. Wsh.),.................................................................. 12, 17

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............................6

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996)......................................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ......................................................................... 6, 14

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) ..................................................................... 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) (quoting *Hanlon,* 150 F.3d at 1026)........................... 11

*Mariscal v. Flagstar Bank*,
    No., 2020 U.S. Dist. LEXIS 151301 (C.D. Cal. Aug. 4, 2020). ................................... 11

*McWhorter v. Ocwen Loan Servicing, LLC*,
    No. 2:15-CV-01831-MHH, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019)............................. 16, 17

*Montesi et al. v. Seterus Inc.*,
    No. 2015CA010910 (Palm Beach County, FL).......................................................... 13

*Morandi v. Nationstar Mortg., LLC*,
    No. 219CV06334MCSMAA, 2021 WL 1398967 (C.D. Cal. Apr. 6, 2021). ............................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................8

*Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................ 1, 5, 7

*Paz v. AG Adriano Goldschmeid, Inc.*,
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016). ................................ 12

*Perkins v. LinkedIn Corp.*,
    No. 5:13- cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ..................................... 14

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..............................................................................................8

*Sanders v. LoanCare, LLC*,
    No. CV 18-9376 PA (RAOX), 2020 WL 8365241 (C.D. Cal. 2020) ..................................... 13, 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................................7

*Stewart v. Applied Materials, Inc.*,
    No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................................8

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...............................................................................................6

*Villalpando v. Exel Direct, Inc.*,
    303 F.R.D. 588 (N.D. Cal. 2014) ....................................................................................... 15

*WM. Bolthouse Farms, Inc.*,
    No.: 1:19-cv-00312-AWI-JLT, 2020 WL 2175352 (E.D. Cal. May 4, 2020) ............................ 16

## **STATUTES**

Unfair Competition Law, Bus. & Prof. Code §§ 17200. *et seq* ...................................................2, 3

Rosenthal Fair Debt Collection Practices Act ...........................................................................2

## I.    INTRODUCTION

Guadalupe Alvarenga Corona ("Plaintiff"), by and through Class Counsel, respectfully seeks final approval of the proposed nationwide class Settlement Agreement and Release ("Agreement"), which resolves claims arising out of PNC Bank, N.A.'s ("PNC" or "Defendant"), practice of charging fees for making mortgage payments over the phone or online ("Pay-to-Pay Fees"). The Settlement achieves an excellent result for the Class, as it establishes a $661,793.51 common fund that will provide cash payments to class members, and cover administration costs, reasonable attorney's fees and expenses, and a service award. Exhibit A to Declaration of Kiley Lynn Grombacher ("Grombacher Decl.") at ¶¶4 and 25.[1]  The Notice program approved by this Court has been dutifully carried out and, after a successful notice campaign whereby the direct mail campaign reached nearly 100% of the class- there was only one opt-out thus far and there have been no objections, demonstrating the fairness of the Settlement as a whole. (Declaration of Sharon Howard ("Howard Decl.") at ¶8.

As discussed below, the Settlement is "fair, reasonable, and adequate to all concerned" and therefore merits final approval. *Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). The settlement fund provides adequate compensation of the class, maximizes redemption by automatically paying class members instead of requiring them to submit claims and provides that no portion of the settlement fund will revert to PNC.

This Settlement is a superb result for the class when balanced against the hotly contested legal theories that made continued litigation risky, with the chance of no recovery at all.  Accordingly, Plaintiff respectfully request that this Court: (1)

---

[1]  Based on its responses to discovery, PNC ceased charging Pay-to-Pay fees to California consumers on December 11, 2020.

grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Guadalupe Alvarenga Corona as Class Representative, (5) affirm the appointment Bradley/Grombacher LLP as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action.

## II.    SUMMARY OF RELEVANT FACTS

This class action arises from Pay-to-Pay fees charged by Defendant. Plaintiffs represent a putative class of California homeowners who were charged "convenience fees" to make payments online or over the phone.  Plaintiffs contend that under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" or the "Rosenthal Act"), the fees are illegal unless they are expressly authorized by a statute or by the mortgage contract and that the fees were not so authorized.  Plaintiff contends that the fees are not so authorized and therefore they are illegal.

The Class Period is June 22, 2016 to March 16, 2021 ("Class Period").  PNC has indicated that it ceased charging Pay-to-Pay fees on December 11, 2020.

### A.    Procedural History and Motion Practice

Plaintiff filed her Complaint on June 22, 2020 in the Superior Court for the County of Los Angeles.  Defendant removed the case to this Court on July 22, 2020. (Dkt No. 1).  Plaintiff file a First Amended Complaint on September 3, 2020.  (Dkt No. 13).  The First Amended Complaint asserted claims under the RFDCPA and Unfair Competition Law, Bus. & Prof. Code §§ 17200. *et seq*. ("UCL") as well as a claim for breach of contract.

On October 13, 2020, PNC moved to dismiss the Complaint.  (Dkt No. 21). On November 3, 2020 Plaintiff filed a Seconded Amended Complaint, asserting the same claims, and clarifying and expanding upon the First Amended Complaint. (Dkt No. 25).

On December 16, 2020, PNC filed a motion to dismiss the Second Amended Complaint. (Dkt No. 32). The Court dismissed Plaintiff's breach of contract claim with leave to amend and denied the motion in all other respects. (Dkt No. 45). PNC answered the Second Amended Complaint on April 21, 2021. (Dkt No. 49).

### B.   Discovery

On April 9, 2021, PNC served responses to Plaintiff's discovery requests. PNC's responses included, among other things, interrogatory responses specifying the total amount of Pay-to-Pay fees charged to class members during the relevant time period -- $2,005,434.88 and that PNC ceased charging Pay-to-Pay fees on December 11, 2020. PNC also indicated that the class is comprised of 26,212 members. The parties also met and conferred on several occasions regarding discovery, including managing class discovery.

### C.   Mediation & Negotiation

Armed with this information, and through mediation conducted on May 24, 2021 with the experienced and Chambers ranked mediator Jeff Kichaven, Plaintiff was able to reach an agreement in principle on a settlement for a $661,793.51 common fund representing 33% of the total amount of fees charged to the class.

### D.   Preliminary Approval

On September 9, 2021, the Court granted preliminary approval of the Settlement. ECF No. 65

## III.   OVERVIEW OF SETTLEMENT TERMS

### A.   Composition of the Proposed Settlement Class

The settlement class is comprised of:

> All persons who were borrowers on residential mortgage loans serviced by PNC and secured by residential real property located in the State of California who, during the Class Period, paid at least one fee to PNC for making a loan payment by telephone, interactive voice response system, or the internet, which PNC has not refunded.

**Exhibit A** to Declaration of Kiley L. Grombacher ("Grombacher Decl.") at ¶4.

The Class period runs from June 22, 2016 to March 16, 2021.

**B.    Settlement Consideration**

The Settlement fund is $661,793.51.  **Exhibit A** to Grombacher Decl. at ¶¶4 and 25.

**C.    Release by the Settlement Class**

Pursuant to the terms of the settlement agreement, Plaintiff and the class agree to release all claims, demands, damages, causes of action, rights, attorneys' fees and expenses whatsoever, that arise from or relate in any way to the facts, allegations and disputes that are the subject matter of the Action, including any claims of any nature whatsoever in law or equity which were, or could have been asserted, in the Action or that arise out of or relate in any to the collection or attempted collection of Fees including but not limited to, statutory or regulatory violations, state or federal debt collection claims (including but not limited to violations of the Fair Debt Collection Practices Act and the California Rosenthal Fair Debt Collection Practices Act), unfair, abusive or deceptive act or practice claims, tort, contract, or other common law claims, or violations of any other related or comparable federal, state, or local law, statute or regulation, and any damages (including any compensatory damages, special damages, consequential damages, punitive damages, statutory penalties, attorneys' fees, costs) related thereto, directly or indirectly, and any equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether accrued or unaccrued, known or unknown. **Exhibit A** to Grombacher Decl. at ¶4.

**D.    Attorney's Fees and Service Payment**

The Settlement agreement provides for a service award subject to Court approval of up to $5,000.  **Exhibit A** to Grombacher Decl. at ¶8.  Plaintiff's counsel seeks fees of 30% of the Settlement Fund after payment of the Settlement Administrator and service payment.  Plaintiff's counsel also seeks reimbursement of costs from the Settlement Fund totaling approximately $5,000.

### E.   Settlement Administrator and Administration Costs

Plaintiff's counsel has retained KCC Class Action Services, LLC ("KCC") to administer the settlement.  The Settlement Administrator's fee of approximately $70,000 will be paid from the Settlement Fund.

## IV.   NOTICE WAS PROVIDED IN ACCORDANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER AND CLASS MEMBERS HAVE RESPONDED FAVORABLY

### 1.   Dissemination of Notice

On October 15, 2021, the Settlement Administrator ("KCC") caused the Notice to be printed and mailed to the 26,212 unique names and mailing addresses in the Class List.  Also, on October 15, 2021, KCC emailed a Notice to 21,250 unique email addresses in the Class List.  Also, on October 15, 2021, KCC emailed a Notice to 21,250 unique email addresses in the Class List. (Howard Decl.at ¶¶3-4.)

Since mailing the Notices to the Class Members according to the mailing addresses from the Class List that had been run through the National Change of Address Database, KCC has received 62 Notices returned by the USPS with undeliverable addresses. KCC utilized the services of an identity verification vendor to perform address searches for these undeliverable Notices, who were able to locate updated addresses for 2 Class Members. New notice packets were mailed to those Class Members and those were not returned as undeliverable as of this date. Accordingly, KCC estimates that the mailed notice reached nearly 100% of the Settlement Class.  (Id. at ¶¶5-6.)

### 2.   Requests for Exclusion

The postmark deadline for Class Members to request to be excluded from the class is December 8, 2021. As of the date of this declaration, KCC has received one timely request for exclusion from Francis Morone. An updated declaration will be provided at the close of the opt-out period. (Howard Decl. ¶¶ 10-11.)

### 3.   There Have Been No Objections Filed By Class Members

The deadline for Class Members to object to the settlement is December 8, 2021. As of the date of this declaration, KCC has received no objections to the settlement. (Howard Decl. ¶12).

### 4.  Disputes

To date, there have been no disputes to the settlement.

## V.   LEGAL STANDARD FOR FINAL APPROVAL

Strong judicial policy favors settlement of class actions. See *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); see also *In re ECOtality, Inc. Sec. Litig.,* No. 13-cv-03791-SC, 2015 WL 5117618, at *2 (N.D. Cal. Aug. 28, 2015) ("Despite the importance of fairness, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. See, e.g., *Garner v. State Farm Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("'Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.'").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The standard for determining

whether to grant final approval to a class action settlement is "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Ninth Circuit has listed factors that courts must balance to decide whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

District courts analyze the contents of the notice to the class and whether the settlement was "the product of collusion among the negotiating parties." *Id.* at 575-76. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quotation marks, citations, and notations omitted). Finally, "strong judicial policy... favors settlements." *Churchill Vill.*, 361 F.3d at 576 (citation omitted).

## VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The Settlement is presumptively fair as (1) it is the result of arms' length

negotiations, (2) there has been investigation and discovery sufficient to permit counsel and the court to act intelligently, and (3) counsel are experienced in similar litigation. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (stating that the Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution"); *see also Id.* at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("DIRECTV") (explaining that class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms- length negotiation"); *Stewart v. Applied Materials, Inc.,* No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (explaining that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

### A.   There Is a Presumption of Fairness

#### 1.  The Settlement was negotiated at arm's length.

The Settlement was negotiated at arm's length during an all-day mediation sessions before experienced and Chambers ranked mediator Jeff Kichaven and weeks of negotiations. Grombacher Decl. ¶¶ 19-25. See *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.");*See also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of an arms'-length, non-collusive, negotiated resolution." (internal citation and quotation marks omitted)).

Additionally, the Parties did not discuss attorneys' fees or a Service Award until after they had agreed upon the material terms of the Settlement. Grombacher

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Decl. ¶ 24. Thus, nothing should disturb the Court's preliminary determination that the proposed Settlement is the product of hard-fought settlement discussions and negotiations between Plaintiff and PNC

### 2.  The Settlement followed extensive investigation and discovery.

Before filing the Complaint, Plaintiff's Counsel spent many hours investigating potential claims against PNC. Grombacher Decl. ¶26. Class Counsel interviewed plaintiff and gathered information about PNC's conduct and its impact on consumers. *Id*. This information was essential to Class Counsel's ability to evaluate the risks of this litigation and the benefits to the Class. Class Counsel also expended significant resources researching and developing the legal claims at issue, as well as other settlements of similar cases.

Class Counsel conducted formal and informal discovery including The informal discovery included information regarding the size of the Settlement Class and the amount of Pay-to-Pay Fees collected by PNC during the preceding several years.  As a result, Class Counsel are well versed in the novel and complex issues raised in this case.

### 3.  Experienced Counsel Negotiated the Settlement

Class Counsel have extensive experience in complex litigation, consumer rights, and other class action litigation. Grombacher Decl., ¶¶43-50. Based on their foundation of knowledge from other related litigation and its investigation into this specific case, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Plaintiff's and the Class's claims, and the appropriate basis upon which to settle them. Id. at ¶¶18, 21-22.  Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Id. at ¶¶ 37-39.

### 4.  The Settlement Is Adequate

The Settlement Agreement reached by the parties here is adequate in accordance with *Briseno v. Henderson*, 998 F.3d at 1026-28. Namely, it avoids all

9

of the red flags of a class settlement discussed in Bluetooth. First, as discussed in more detail in the accompanying Motion for Fees, Costs, and Service Award, Class Counsel does not receive a disproportionate amount of the Settlement Fund when compared to the benefit to the class. Rather, they seek a fee of 30% of the Common Fund, which is within the range of reasonableness. Id. at ¶¶ 31-64.

Second, under no circumstances will any of the Settlement Fund revert back to PNC. None of the factors that might prevent this court from finding that the Settlement is adequate under *Briseno* are present.

**B.      The *Churchill* Factors Support the A Finding of  Fairness**

Although there is an initial presumption of fairness, the Court must independently analyze the Settlement to determine whether it is in the best interests of the class, considering:

> [t]he strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). Each of these factors weighs in favor of finally approving the Settlement.

**1.   The Settlement Is Fair, Reasonable and Adequate In Light Of The Strengths And Risks Of Plaintiff's Case**

Here, the Court has not ruled on the question of whether PNC's attempt to cure Plaintiff's claim bar her from further pursuing litigation.  (*See* Dkt No. 45 at 11-12) Additionally, there are other risks to the class as this Court recently denied class certification in a similar case where certification was not sought for settlement purposes only.  *Morandi v. Nationstar Mortg., LLC*, No. 219CV06334MCSMAA,

2021 WL 1398967, at *6 (C.D. Cal. Apr. 6, 2021).  Plaintiff maintains that a class is certifiable even if not for settlement purposes only and that the *Morandi* decision is distinguishable.  Nonetheless, this decision represents a clear risk to the class if continued litigation were pursued instead of reaching settlement.  Moreover, there are potential defenses on the merits, including that Rosenthal Act claims may be limited to payments made when "the debt underlying the complaint is immediately due or past due, or the defendant has taken action to collect the debt as if it was past due." *Mariscal v. Flagstar Bank*, No., 2020 U.S. Dist. LEXIS 151301, at *7-8 (C.D. Cal. Aug. 4, 2020).  Here, Plaintiff maintains that the mortgage payments for which fees were paid were due or past due, but this represents another litigation risk to the class.  Based on the foregoing, the risks to Plaintiff and the class of proceeding with the litigation are manifest.

These risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. This case is settling in its early stages; if the Settlement is not approved, the parties will likely need to litigate through multiple dispositive motions and a motion for class certification. *Id.* ¶ 10. The litigation would likely take years to resolve and involve expensive expert discovery. *Id.* ¶ 11. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Class Members. *Id.* Instead, there would be multiple points at which the Class's claims could be narrowed or dismissed. *Id.* ¶¶ 10-11. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.,* No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors preliminary approval.

## 2.  The Settlement Confers Real Value on Class Members

The Settlement provides substantial monetary relief to the Class. Ms. Corona secured a common fund of $661,793.51 which constitutes approximately 33% of

11

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

the total Pay-to-Pay Fees the Settlement Class paid to PNC during the Class Period[2]. Agreement § 3. Each of the Settlement Class Members are entitled to receive monetary benefits from the Net Settlement Fund on a pro rata basis, based upon the amount of Pay- to-Pay Fees paid by each Settlement Class Member during the Class Period. Agreement § 5.

As of December 11, 2020, PNC has voluntarily ceased charging or collecting Pay-to-Pay Fees to any borrower in the United States, while still offering borrowers the option to make payments online or over the phone.

### 3.  The Class Member Have Responded Favorably to the Settlement

In determining the fairness of a settlement, the Court should consider class member objections. The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are fair. See, e.g., *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected to the settlement"). While the opt-out and objection deadline have not yet expired only one Class Member opted out of the settlement

---

[2] This settlement is in line with other settlements in similar cases involving Pay-to-Pay Fees. *See, e.g.*, Final Order and Judgment, *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-1831 (N.D. Ala.), Dkt. 71 ($9.7 million common fund representing 30% of damages in Pay-to-Pay Fee case); Final Order and Judgment, *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash.), Dkt. 122 ($3.875 million common fund representing approximately one third of damages in Pay-to-Pay Fee case); *Montesi et al. v. Seterus Inc.*, No. 2015CA010910 (Palm Beach County, FL) ($1.75 million common fund representing 35% of damages in Pay-to-Pay Fee case); *Sanders v. LoanCare, LLC*, No. CV 18-9376 PA (RAOX), 2020 WL 8365241 (C.D. Cal. 2020) ($3.4 million fund representing 38.64% of the fees.).  *See also Alvarez v. Amerisourcebergen Drug Corporation*, 19-CV-02253-MCS-KES, Dkt. No. 30 at 6 (approving settlement amount in light of "obstacles not only with certifying the class but also surviving summary judgment on all claims and ultimately prevailing at trial").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

and none of the Class Members objected to the settlement. Howard Decl. ¶14, 16. Indeed, the absence of any objections from Class Members who received notice and the small number of opt-outs indicates overwhelming favor from the Class.

This support is particularly notable given that over 26,212 class members contacted the Settlement Administrator directly via telephone, with over 1,660 unique visitors to the Settlement Website. Id. ¶ 11,13. The lack of opt-outs when paired with the response rate, also indicate a favorable reaction by the class members to the proposed Settlement and provide further support for final approval. See, e.g., *Perkins v. LinkedIn Corp.,* No. 5:13- cv-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. Feb. 16, 2016) ("low rates of objections and opt-outs are 'indicia of the approval of the class'") (citation omitted); *In re: Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objectors (a "handful") and opt-outs (only one) supported trial court's finding that settlement was "fair, adequate and reasonable"); *Hanlon,* 150 F.3d at 1027 (9th Cir. 1998) (upholding approval of settlement where only 971 Class Members, or 0.1% of the class, opted out and only a few objected); *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *11 (N.D. Cal. Mar. 31, 2020) ("Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the Class Members." (internal quotation marks and citation omitted)).

Additionally, because there were no objectors, objections cannot weigh against final approval.

## C.    CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Parties agreed to certification of the Settlement Class, the Court conditionally certified it, and the Court should now certify it at final approval.

Here, the proposed class is sufficiently numerous because there are approximately 26,212 proposed class members. *See Villalpando v. Exel Direct, Inc.,* 303 F.R.D. 588, 605-606 (N.D. Cal. 2014) ("[C]ourts have routinely found the numerosity requirement satisfied when the class compromises 40 or more members.").

Second, the claims of class members stem from the same factual and legal questions, including whether Defendant had a policy and/or practice of collecting Pay-to-Pay fees and whether Defendant's practice of collecting Pay-to-Pay fees violates the RFCPDA. These common questions--and there are many more--are sufficient to establish commonality. *Dukes,* 131 S. Ct. at 2556 ("[E]ven a single common question will do"); *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 648 (C.D. Cal. 1996) ("[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class.").

Third, Plaintiff's claims are typical of class member claims because they arise from the same course of conduct: charging borrowers a fee to make payments. To meet typicality, a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Felix v. WM. Bolthouse Farms, Inc.,* No.: 1:19-cv-00312-AWI-JLT, 2020 WL 2175352, at *5 (E.D. Cal. May 4, 2020) (quoting *Hanlon,* 150 F.3d at 1020).

Fourth, Plaintiff and proposed class counsel have and will continue to adequately represent the class. Plaintiff shares the same interest in securing relief for her claims in this case as every other class member - since they are harmed in the same way - and there is no evidence of any conflict of interest. Plaintiff has demonstrated her continued willingness to vigorously prosecute this case. (Corona Decl. ¶¶6-14.) Further, Plaintiff has retained adequate counsel. *See, e.g., Kanawi v. Bechtel Corp.,* 254 F.R.D. 102, 111 (N.D. Cal. 2008) (finding adequacy met where plaintiffs "demonstrated their commitment to the action" and their attorneys were "qualified to represent the class").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

The proposed class satisfies the predominance requirement. Plaintiff's causes of action all hinge on the same central issues: (1) whether Defendant had a policy or practice of charging Pay-to-Pay Fees; (2) Whether Defendant violated the Rosenthal Act by charging Pay-to-Pay Fees; (3) whether Defendant violated the UCL; and (4) whether Plaintiff and the Class was damaged by Defendant's conduct. Plaintiff's claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by class members' mortgages or permitted by law.

Courts have certified claims similar to these for settlement under Rule 23. *See McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *1 (N.D. Ala. Aug. 1, 2019) (noting that claims had been certified for settlement purposes in Fair Debt Collection Practices Act (FDCPA) case regarding Pay-to-Pay fees); *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash.), Dkt. 122 (same); *Sanders v. LoanCare, LLC*, No. CV 18-9376 PA (RAOX), 2020 WL 8365241 (C.D. Cal. Dec. 4, 2020) (certifying similar claims under the Rosenthal Act and UCL for settlement purposes).

With respect to superiority, the proposed class is comprised of over 26,000 members each of whom have relatively small individual claims. By providing swift resolution of common claims in a way that would not be possible on an individual basis, a class action is the superior method of adjudication. *See Alvarez v. Amerisourcebergen Drug Corporation*, 19-CV-02253-MCS-KES, Dkt. No. 30 at 6 (concluding that superiority element was satisfied because "[t]he claims here do not appear to support recoveries that would incentivize individual action.").

## V.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Plaintiff as Class Representative, (5) affirm the appointment Kiley Lynn Grombacher of Bradley/Grombacher LLP and John Habashy of Lexicon Law,

PC as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action. By the separate motion filed concurrently herewith, Plaintiff also requests that the Court grant a service award of $5,000 to the Class Representative, and award Class Counsel reasonable attorneys' fees and expenses in the amount of $198,538.05, as set forth in the Settlement, which shall be paid out of the Settlement Fund.

Dated:  December 1, 2021                Respectfully submitted,


                                        **BRADLEY/GROMBACHER, LLP**
                                        **LEXICON LAW, PC**

                                        By:  /s/ Kiley Lynn Grombacher
                                             Marcus J. Bradley, Esq.
                                             Kiley Lynn Grombacher, Esq.
                                             John R. Habashy, Esq.
                                             *Attorneys for Plaintiff*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**PROOF OF SERVICE**

STATE OF CALIFORNIA COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within action; my business address 31365 Oak Crest Drive, Suite 240, Westlake Village, CA 91361.

On December 1, 2021, I served the foregoing documents described as:

1) **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**

2) **PLAINTIFF'S NOTICE OF MOTION AND MOTION  FOR AWARD OF ATTORNEYS FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND APPROVAL OF SERVICE AWARD TO CLASS REPRESENTATIVE**

3) **DECLARATION OF KILEY LYNN GROMBACHER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR APPROVAL OF ATTORNEYS FEES, COSTS AND SERVICE AWARD;**

4) **DECLARATION OF GUADALUPE ALVARENGA CORONA IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS FEES, COSTS AND SERVICE PAYMENT;**

5) **DECLARATION OF SHARON HOWARD RE: NOTICE PROCEDURES**
   on all interested parties in this action as follows: **SEE ATTACHED SERVICE LIST**

[X]  (**BY EMAIL**) On the above date, I served the aforementioned document(s) by electronic mail to the parties' email addresses as they are known to me on the attached Service List. My email address is sboucher@bradleygrombacher.com.   I did not receive, under a reasonable period of time, any indication that the email did not go through.

[X]  (**FEDERAL**) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of member of the bar of this Court at whose direction the service was made

Executed December 1, 2021, at Westlake Village, California.

_____
Suzette Boucher

**PROOF OF SERVICE**

***GUADALUPE ALVARENGA CORONA v. THE PNC FINANCIAL SERVICES***
***CENTRAL DISTRICT OF CALIFORNIA***
***CASE NO. 2:20−cv−06521−DMG−SP***

<u>**Service List**</u>

| | |
|---|---|
| **BUCKLEY LLP**<br>Fredrick S. Levin<br>Geoffrey L. Warner<br>100 Wilshire Boulevard, Suite 1000<br>Santa Monica, CA 90401<br>Telephone: (310) 424-3900<br>Facsimile: (310) 424-3960<br>Email: flevin@buckleyfirm.com<br>            gwarner@buckleyfirm.com<br><br>Assistant: Rachael Shimek<br>rshimek@buckleyfirm.com | Attorney for Defendant,<br>THE PNC FINANCIAL SERVICES<br>GROUP, INC. |