UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE ALVARENGA CORONA, individually and on behalf of a class of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>PNC BANK, N.A., a Pennsylvania Corporation; AND DOES 1-100,<br><br>Defendants. | Case No. 2:20-cv-06521-MCS-SP<br><br>**CLASS ACTION**<br><br>**ORDER (1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF NO. 66) AND (2) GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARD (ECF NO. 67)** |

This is a class action against Defendant PNC Bank, N.A. ("PNC" or "Defendant") on behalf of all persons with a California address who were borrowers on residential mortgage loans to which PNC acquired servicing rights, and paid a fee to PNC for making a loan payment by telephone, interactive voice response system ("IVR"), or the internet (collectively "Fees"), from June 22, 2016 through the present. (Second Amended Complaint ("SAC"), ECF No. 25.) By this action, Guadalupe Alvarenga Corona ("Plaintiff") challenged PNC's practice of charging such Fees under California law and sought monetary and injunctive relief.

1

The parties reached a settlement on behalf of the class, and the Court preliminarily approved the settlement and certified the class. (Order Granting Mot. for Preliminary Approval ("Order"), ECF No. 65.) The parties now seek final approval of the class action settlement. (Mot. for Final Approval ("Mot."), ECF No. 66). Plaintiff also seeks attorney's fees of $198,538.53, which represents thirty percent the common fund; reimbursement of costs totaling $4,778.80; and a service award of $5,000. (Mot. for Att'y Fees ("Fees Mot."), ECF No. 67.) For the reasons discussed below, the Court grants the motion for final approval and grants in part and denies in part the motion for fees, costs, and a service award.

## I. BACKGROUND

This class action arises from Fees charged by Defendant. Plaintiffs represent a putative class of California homeowners who were charged Fees to make payments online or over the phone. Plaintiffs contend that, under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" or the "Rosenthal Act"), the fees are illegal unless they are expressly authorized by a statute or by the mortgage contract. Plaintiff contends that the fees are not so authorized and, therefore, that they are illegal.

Plaintiff filed her Complaint on June 22, 2020, in the Superior Court for the County of Los Angeles. Defendant removed the case to this Court on July 22, 2020. (ECF No. 1.) Plaintiff filed a First Amended Complaint on September 3, 2020. (ECF No. 13.) The First Amended Complaint asserted claims under the RFDCPA and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"), as well as a claim for breach of contract.

On October 13, 2020, PNC moved to dismiss the First Amended Complaint. (ECF No. 21.) On November 3, 2020, Plaintiff filed a Seconded Amended Complaint, asserting the same claims, and clarifying and expanding upon the First Amended Complaint. (ECF No. 25.)

On December 16, 2020, PNC filed a motion to dismiss the Second Amended Complaint. (ECF No. 32.) The Court dismissed Plaintiff's breach of contract claim with

leave to amend and denied the motion to dismiss the remaining claims. (ECF No. 45.) PNC answered the Second Amended Complaint on April 21, 2021. (ECF No. 49.)

## II. SETTLEMENT TERMS

The key provisions of the parties' Settlement Agreement are set forth below.

### A. Proposed Class

On September 9, 2021, the Court preliminarily approved the settlement and certified the following settlement class:

> All persons who were borrowers on residential mortgage loans serviced by PNC and secured by residential real property located in the State of California who, during the Class Period, paid at least one fee to PNC for making a loan payment by telephone, interactive voice response system, or the internet, which PNC has not refunded.

(Order 8.) The Class Period defined in the Settlement Agreement is June 22, 2016, to March 16, 2021.

The Court also appointed Plaintiff as the class representative and her counsel as class counsel.

### B. Settlement Fund

The Settlement fund is $661,793.51. The Settlement creates a common fund whereby payment therefrom shall be made to cover the costs of administration, attorney's fees, costs, Plaintiff's service award, and the individual settlement payments to Settlement Class Members.

Every Settlement Class Member will automatically receive a share of the Settlement Fund determined according to the proportional amount of Pay-to-Pay Fees charged to that Class Member by PNC within the class period. (Settlement Agreement § 5.C.) Payments to Settlement Class Members shall be made per loan, such that the settlement payment on any loan with more than one Settlement Class Member borrower shall be made payable jointly to all Settlement Class Member borrowers on that loan.

(*Id.* § 5.D.) Thus, for each loan for which more than one borrower on that loan is a Settlement Class Member, the Settlement Administrator shall make a single allocation to that loan payable to all co-borrower or joint borrower Settlement Class Members on that loan. (*Id.*) Payments will be made by check. (*Id.* § 5.H.)

### C. Release by Class Members

Pursuant to the terms of the Settlement Agreement, Plaintiff and the class agree to release all claims, demands, damages, causes of action, rights, attorney's fees and expenses whatsoever, that arise from or relate in any way to the facts, allegations and disputes that are the subject matter of the action, including any claims of any nature whatsoever in law or equity which were, or could have been asserted, in the action or that arise out of or relate in any to the collection or attempted collection of Fees including but not limited to, statutory or regulatory violations, state or federal debt collection claims (including but not limited to violations of the Fair Debt Collection Practices Act and the California Rosenthal Fair Debt Collection Practices Act), unfair, abusive or deceptive act or practice claims, tort, contract, or other common law claims, or violations of any other related or comparable federal, state, or local law, statute or regulation, and any damages (including any compensatory damages, special damages, consequential damages, punitive damages, statutory penalties, attorney's fees, costs) related thereto, directly or indirectly, and any equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether accrued or unaccrued, known or unknown.

Plaintiff and the class further agree to waive and release any and all provisions, rights, and benefits conferred either (a) by section 1542 of the California Civil Code, or (b) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released by the Settlement Agreement. Plaintiff and the class agree that they may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the claims released

pursuant to the Settlement Agreement, but each of those individuals expressly agrees that he or she shall waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the claims released pursuant to the Settlement Agreement, whether or not concealed or hidden, without regard to subsequent discovery or existence of such different or additional facts.

### III. NOTICE PROCEDURE

Notice was sent to potential class members pursuant to the Settlement Agreement and the method approved by the Court. The Class Notice adequately describes the litigation and the scope of the involved class. Further, the Class Notice explains the amount of the Settlement Fund, the plan of allocation, that Plaintiff's counsel and Plaintiff will apply for attorneys' fees, costs, and a service award, and the class members' option to participate, opt out, or object to the settlement.

On October 15, 2021, the settlement administrator, KCC Class Action Services, LLC ("KCC"), caused the Notice to be printed and mailed to the 26,212 unique names and mailing addresses in the Class List. Also on October 15, 2021, KCC emailed a Notice to 21,250 unique email addresses in the Class List. KCC received 62 Notices returned by the USPS with undeliverable addresses. KCC utilized the services of an identity verification vendor to perform address searches for these undeliverable Notices, who were able to locate updated addresses for two Class Members. New notice packets were mailed to those Class Members and those were not returned as undeliverable as of this date. Accordingly, KCC estimates that the mailed notice reached nearly 100% of the Settlement Class. (1st Howard Decl., ECF No. 66-3.)

KCC received five timely requests for exclusion. KCC received no timely objections to the settlement. (2d Howard Decl., ECF No. 68.)

///

5

## IV. MOTION FOR FINAL APPROVAL

### A. Class Certification

The Court previously found that the class merited certification for settlement purposes, and nothing has changed since the Court conditionally certified the class. Accordingly, the Court reincorporates its prior analysis of the Rule 23 factors and certifies the class for settlement purposes.

### B. Fairness of Settlement Terms

The Court previously found that the settlement was fair, adequate, and reasonable in its preliminary approval order.

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Analyzing these factors, the Court finds the settlement fair, reasonable, and adequate.

#### 1. Strengths of Plaintiff's Case

Defendant denies liability in this case. Plaintiff appears to be settling disputed claims, which favors approving the settlement. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRCTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted).

#### 2. Risk/Expense of Litigation & Status of Proceedings

Without settlement, the cost of continuing to litigate this class action would be great because of discovery and motion practice. This factor weighs in favor of approving the settlement.

### 3. Risk of Maintaining Class Action Status

Plaintiff sets forth her belief that if the case proceeded, PNC would likely assert that individualized issues preclude certification. This factor weighs in favor of approving the settlement.

### 4. Amount of Settlement

The Settlement Agreement provides for a Settlement Fund that is within the acceptable range of recovery.

### 5. Experience and Views of Class Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal quotation marks omitted). Class Counsel has experience in class action litigation and has endorsed the settlement as fair, reasonable, and adequate. This factor favors final approval.

### 6. Presence of Government Participant

There is no government participant in this case, so this factor is neutral.

### 7. Reaction of Class Members

Only five class members opted out of the class. There were no objections to the Settlement Agreement, and to the extent there were objections, they are overruled. This factor weighs in favor of granting final approval. *See In re Omnivision*, 559 F. Supp. 2d at 1043.

On balance, these factors weigh in favor of approving the settlement.

## C. Conclusion

Having considered the above factors, the Court finds that the proposed settlement is fair, reasonable and adequate. Accordingly, the Court grants the motion for final approval.

///

## V. MOTION FOR FEES, COSTS, AND SERVICE AWARD

### A. Service Award

The trial court has discretion to award incentives to class representatives. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009). The criteria courts use to consider the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). $5,000 is a "presumptively reasonable," "typical incentive award[]." *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

Plaintiff avers she worked closely with Class Counsel to prosecute the action and actively participated in all stages of the litigation. Plaintiff voluntarily assumed the responsibilities of bringing and prosecuting the action on behalf of other individuals, understanding the risks involved in litigation. (Corona Decl., ECF No. 60-3.) On this basis, the Court finds the proposed $5,000 service award reasonable and appropriate.

### B. Litigation Expenses and Administration Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). Class Counsel submits Plaintiff incurred costs of $4,778.80 for parking, mediation, and service of process. (Grombacher Decl. ¶ 53 & Ex. C, ECF No. 66-1.) The Court approves reimbursement of these costs from the common fund.

"Courts regularly award administrative costs associated with providing notice to the class." *Sanchez v. Frito-Lay, Inc.*, No. 1:14-cv-00797 AWI-MJS, 2015 U.S. Dist.

LEXIS 102771, at *51 (E.D. Cal. Aug. 5, 2015). Here, the costs KCC incurred to complete service are significantly higher than the estimate Class Counsel provided at the preliminary approval stage. (*Compare* 3d Howard Decl. ¶ 2, ECF No. 72-5 (indicating KCC incurred $107,196.03 in administration costs but will honor the cost estimate of $92,835), *with* Grombacher Prelim. Approval Decl. ¶ 64, ECF No. 66-1 (estimating $67,000 for settlement administration).) Nonetheless, the Court has no reason to question the propriety of the costs incurred, as reduced to the cost estimate KCC provided Class Counsel. (3d Howard Decl. Ex. A.) The Court approves administration costs of $92,835.00.

### C. Attorney's Fees

"In a certified class action, the court may award reasonable attorney's fees . . . ." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). But this "discretion must be exercised so as to achieve a reasonable result." *Id.*

Class Counsel requests a fee award of 30% of the common fund. (Fees Mot. 8–17.) Courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth Headset*, 654 F.3d at 942. There are no "special circumstances" here justifying an upward departure from this benchmark. *Id.* (internal quotation marks omitted).

A lodestar cross-check fails to demonstrate the reasonableness of the requested fee. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."). Class Counsel states that Plaintiff incurred $173,010.00 in attorney's fees. (Grombacher Decl. ¶ 58; Fees Mot. 6.) An award of 30% of the common fund would represent 115% of the lodestar, which is excessive given counsel's unexceptional performance in this standard class action. Moreover, the Court questions the propriety

of the rates and hours counsel used to calculate the lodestar. At the final approval hearing, the Court invited Class Counsel to provide evidence substantiating the high rates—$875 and $850 for partners, $600 for an associate, and $275 and $125 for nonlawyer legal professionals—used in the lodestar calculation. In response, Class Counsel submitted a single fee order from another judicial officer in this district and several publications describing rates in the community. The fee order has limited persuasive value; Judge Birotte approved Class Counsel's request for a common fund award, applying a lodestar cross-check without specifically evaluating and approving the rates counsel requested. Order Granting Mot. for Att'y Fees, *Haro v. Lab. Corp. of Am.*, No. 2:18-cv-09091-AB-RAO, ECF No. 49. The rates Class Counsel claimed for the partners were lower in that case. Bradley Decl. ¶ 19, *Haro*, ECF No. 43-1 (requesting rates for partners of $850 and $800). The publications have little to no bearing on the rates applicable here, as they are not specific to counsel in the Los Angeles area who litigate class action matters, and they are stale. (Grombacher Suppl. Decl. Exs. B–D, ECF Nos. 72-2 to -4.) *See Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (finding district court abused its discretion in applying market rates in effect two years before the work performed). None of the evidence Class Counsel submitted justifies the rates for the nonlawyer legal professionals. Accordingly, the Court finds the rates unjustified. Further, Class Counsel has not submitted any evidence, such as timesheets, substantiating the number of hours each member of the team purportedly expended on this litigation. (Grombacher Decl. ¶ 58 (providing total number of hours without any breakdown).)

Class Counsel fails to justify an award of fees departing from the benchmark. The Court awards Class Counsel attorney's fees in the amount of $165,448.38, which represents 25% of the common fund.

///

## VI. CONCLUSION

The Court grants the motion for final approval of the class settlement and grants in part and denies in part the motion for attorney's fees, expenses, and a service award. The Court approves attorney's fees of $165,448.38, litigation expenses of $4,778.80, administration costs of $92,835.00, and a service award of $5,000.00.

**IT IS SO ORDERED.**

Dated: February 18, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE